STATE SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellant, *v.* KAUAIAN DEVELOPMENT COMPANY, INC., ET AL., Defendants-Appellees

NO. 5911

JULY 1, 1980

RICHARDSON, C.J., MENOR, J., RETIRED JUSTICE KOBAYASHI, ASSIGNED BY REASON OF A VACANCY, AND CIRCUIT JUDGE CHANG, IN PLACE OF OGATA, J., RECUSED*

---

\* Justice Kidwell, who heard oral argument in this case, retired from the court on February 28, 1979. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal by State Savings & Loan Association (State) from a judgment entered after a trial on remand pursuant to our opinion in *State Savings & Loan Association v. Kauaian Development Co.*, 50 Haw. 540, 445 P.2d 109 (1968). Based on the record, we treat the instant appeal as an appeal primarily from the trial court's order denying State's motion for a new trial.

In our prior opinion, we reached conclusions of law based upon facts as they appeared from the record at that time. We said that there were five issues between the present parties (exclusive of mechanics lien claimants), which we disposed of as follows:

1. Was a condominium established? We held that the documents showed that Master Lease 1 (ML1) had been submitted to the horizontal property regime and remained in effect.

2. What was the significance of the establishment of a horizontal property regime? We held that the individual units created by the horizontal property regime Declaration were susceptible to conveyance.

3. What interests did the contracts with purchasers convey? We held that the contracts created interests in the units which were superior to those of a subsequent mortgage who receive the mortgage with knowledge thereof. With respect to the facts, we said that a majority of the contracts were executed before State received its mortgage, and that State knew of their existence.

a. Under this issue we discussed the contention that ML1 was extinguished by merger (of lease and fee

title) or surrender. We held that no merger had taken place, which conclusion was based on the documents as a matter of law. We also held that there was insufficient evidence to support the trial court's finding of a surrender.

4. Were the purchasers' interests subordinated to the mortgage by virtue of the condominium deeds and leases or the Sheraton agreement? We held that this issue had to be remanded for the trial court's determination.

5. Were any of the affirmative defenses of estoppel, waiver, forfeiture of the foreclosure right or deprivation of due process established? We held that none of the affirmative defenses was supported by the facts and that due process was not denied by the trial court's failure to make specific findings.

State and the condominium unit owners (appellees) treated the proceedings on remand as limited to specific issues. Based on a pretrial conference agreement of the parties, the trial court entered a written pretrial order containing the following issues:

1. As of the date of execution of the mortgage, what interests, estate or estates, did the individual condominium or apartment unit purchasers have in the mortgaged property?

2. What interests, estate or estates, did purchasers subsequent to the execution of the mortgage acquire?

3. Did these purchasers subordinate their interests, whatever they might be, to the mortgage?

At the pretrial conference, appellees moved that the issues also include:

(a) Should the foreclosure sale be set aside?

(b) Should the proceeds of the foreclosure sale and/or resale of the property be deemed to be held in trust by State for the apartment owners?

(c) The nature and extent of the damages to the purchasers.

(d) The nature of the purchasers' interest in and the amount of the proceeds of the foreclosure sale.

The motion was denied and these issues were not mentioned at the outset of the trial; neither were the issues set by pretrial order modified and/or enlarged during trial.

In its Conclusions of Law the trial court, however, dealt not only with the issues framed at the pretrial conference but also with the issues proposed by appellees on their motion. State contends that there was no testimony, argument or briefing on the additional issues.

The Findings of Fact of the court below, in part premised on our Opinion in the prior appeal, are in substance as follows:

1. The Supreme Court determined that a leasehold condominium regime was established. Finding No. 4.

2. The Supreme Court determined that binding contracts were entered into which created in the defendant condominium apartment owners a property right superior to State, who had knowledge of the existence of the contracts. Finding No. 5.

3. The Supreme Court found that ML1, as amended by Master Lease 2 (ML2), continued as an estate distinct from the fee and that "the defendant condominium apartment owners had a valid leasehold condominium interest in their respective condominium apartments." Finding No. 6.

4. The condominium apartment owners did not subordinate their interests in their respective leasehold condominium apartments to the State Savings/Kauaian Development Company, Inc. (KDCI) mortgage. Finding No. 7.

5. The owners of certain apartment units, listed in Findings Nos. 8 and 15, had entered into binding contracts to purchase such units prior to the recordation of the State Savings/KDCI mortgage on January 17, 1964, and State had actual knowledge of such contracts. Findings Nos. 8, 9 and 15.

6. At the time it entered into the mortgage, State knew that there were nine apartments (Units 1B, 214, 215, 003, 1C, 201, 216, 301 and 302) owned by KDCI free and

clear, which apartments were subsequently transferred to other parties. Finding No. 10.

7. The Kawasaki Trust was the purchaser of 11 apartment units under contracts made on October 30, 1963 which were superior to the mortgage. KDCI subsequently refunded the down payments and took back the property. The units were later transferred to KDCI to Kauaian Land Company, Inc. (KLCI), then to Blue Sea, Inc:, then to Blue Sea Trust. Finding No. 12.

8. The contracts to purchase Units 111, 6B, 211, 213, 110 and 1B were finalized after January 17, 1964. Finding No. 13.

9. Prior to entering into the mortgage with KDCI, State acknowledged that "all 77 apartments have been sold on contracts . . . these 77 apartments have actually been purchased." Finding No. 14.

The Conclusions of Law formulated by the trial court are as follows:

1. On the evidence adduced and the findings of facts, the Court concludes that the condominium unit owners did not subordinate their interest in their respective apartments to the State Savings mortgage dated January 17, 1964.

2. The State Savings mortgage is clearly secondary to the interests of each of the condominium apartment owners in their respective condominium apartments (and proportionate interest in the undivided common elements) referred to in paragraphs 8 and 9 of the Findings of Fact hereto.

3. State Savings is estopped from denying that the apartments referred to in paragraph 13 of the Findings of Fact were "sold" so that equitable interests therein, superior to that of the mortgage, arose prior to the execution and filing of the said mortgage.

4. The foreclosure of the interests of the condominium apartment owners was based on the erroneous theory of law that a condominium had not been established.

5. Inasmuch as a condominium was established, and the lien of the mortgage did not attach to the respective condominium apartments, the purchasers of said condominium apartments were and still are unlawfully deprived of the use of their property from and after the date of the appointment of the Receiver on the 20th day of May, 1966.

6. State Savings & Loan, the mortgagee having wrongfully foreclosed the interests of all of the condominium apartment owners, is liable to the defendant condominium apartment owners, whose names are set forth in paragraphs 8 to 15 of the Findings of Fact in a sum equal to the respective defendants' interests in the property. The dollar amount will be determined by the Court after further hearing.

7. That State Savings & Loan is not entitled to the full amount of the proceeds on the sale on foreclosure of the entire property, but is deemed to be holding the full amount of the proceeds of the foreclosure sale, $913,000.00, and on the subsequent resale for $1,350,000.00, as Trustee for the defendant condominium apartment owners in such amount as may be determined by this Court as due and owing to the defendant condominium apartment owners by reason of the sale of their respective superior interests in the leasehold condominium units.

8. That proceeds shall be returned to the Clerk of the Court pending a determination by the Court of the amount owing to the respective defendant condominium apartment owners and a determination of the balance, if any, to be paid to State Savings & Loan.

9. That State Savings & Loan must account to the defendant condominium apartment owners for the additional profits received from the subsequent sale of the foreclosed property for the sum of $1,350,000.00.

10. That the attorneys for the unit holders shall be entitled to attorneys' fees under Section 607-17, H.R.S., in an amount to be fixed by the Court after hearing.

194

In the instant appeal, after the parties filed their appellate briefs and presented their oral arguments in support of their positions, we issued an order directing them to file supplemental briefs presenting arguments with respect to the following question:

Whether the mortgage instrument dated January 17, 1964 from Kauaian Development Company, Inc. to State Savings & Loan Association was sufficient in form to cause the individual condominium units to be subject to the lien of the mortgage.

The order further stated that:

Consideration shall be given in the supplemental briefs to (1) the determination, as expressed in the opinion of this court in the prior appeal, 50 Haw. 540, that the leasehold estate created by Master Lease 1 did not merge into the fee and existed as an estate distinct from the fee on the date of the mortgage, and (2) the circumstance that the condominium units were created by submission of the leasehold estate under Master Lease 1 to a horizontal property regime.

OPINION

I.

The trial court's Conclusions of Law compel this court partially to reverse the trial court's denial of State's motion for a new trial.[1]

The record shows that the trial court abused its discretion by arbitrarily reaching Conclusions of Law Nos. 4, and 6 to 10, inclusive, without support, evidentiary or otherwise, in the record.[2] Further, Hawaii Rules of Civil Procedure, Rule

---

[1] A partial new trial may be ordered where the issues are severable, which they clearly are here. Wright & Miller, Federal Practice and Procedure: Civil § 2814 (1973).

[2] *See* Wright and Miller, *id.* at § 2818.

16,[3] clearly states that the pretrial order "controls the subsequent course of the action" unless the order is modified. The record does not indicate any modification, express or implied, of the stated issues.

In our opinion, only Conclusions of Law Nos. 1, 2, 3 and 5 fall within the issues delimited by the pretrial order. Conclusions of Law Nos. 4, and 6 to 10, inclusive, are vacated, subject to new trial on remand.

We affirm, however, the denial of a new trial as to Conclusions of Law Nos. 1, 2, 3 and 5, Conclusions which involve issues contained in the pretrial order, for reasons hereinafter stated.

Though the Findings of Fact, in our opinion, all deal directly or indirectly with the issues set in the pretrial order and/or in part premised on our opinion in the prior appeal, we hold that such Findings are binding on the parties in any subsequent proceedings only to the extent that they were necessary for our determination of the status of the purchasers' interests in disposing of this appeal, and that otherwise the trial court may make new and different findings for the purpose of resolving the remaining issues which are sub-

---

[3] Rule 16.   PRE-TRIAL PROCEDURE; FORMULATING ISSUES. In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider

(1) The simplification of the issues;

(2) The necessity or desirability of amendments to the pleadings;

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

(4) The limitation of the number of expert witnesses;

(5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;

(6) Such other matters as may aid in the disposition of the action.

The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to nonjury actions or extend it to all actions.

ject to further trial on remand. *See* Annot., 19 A.L.R.3d 502 (1968).

## II.

In the resolution of the pretrial ordered issues it is essential that initially we resolve the question of whether the State Savings/KDCI mortgage, dated January 17, 1964, was sufficient in form to cause the individual condominium units to be subject to the lien of the mortgage.

In our prior opinion, we held that ML1 was not destroyed by merger or surrender, and was still in effect, subject to the Declaration, when the mortgage was given. *See State Savings & Loan Association v. Kauaian Development Co., supra* at 555, 445 P.2d at 120. We found that purchasers could have acquired, and some did acquire, interests in the condominium units before the mortgage was given. We thus recognized, and it is the law of this case, that KDCI was the owner of two distinct estates in the land described in the mortgage, being (1) the fee simple ownership subject to ML1 and (2) the leasehold estate under ML1, which in turn was subject to the Declaration. We did not at that time expressly address the question of whether the mortgage instrument subjected both of these estates to the lien of the mortgage. The question of priority in time between State and the condominium purchasers, however, was based on the implicit assumption that the mortgage imposed a lien on the condominium units as well as the fee simple ownership.

It is now necessary that we re-examine said assumption and determine whether the mortgage instrument was sufficient in form to bring the individual condominium units within its terms.[4]

---

[4] The trial court concluded, as a matter of law, that "the lien of the mortgage did not attach to the respective condominium apartments." Conclusion of Law No. 5.

State contends that this Conclusion is erroneous because all purchasers claim title under ML2, which by its terms is subject to the mortgage. In our opinion, State fails to deal with the basic question, *i.e.* whether the mortgage was in the first instance sufficient as a conveyancing instrument to create a lien on the condominium units.

The mortgage instrument, after a metes and bounds description of the real property in question, provides in relevant part as follows:

Being the same parcel of land that was conveyed to the said Mortgagor by ANTONE VIDINHA, JR. and EDENE N. VIDINHA, husband and wife, by Deed dated November 13, 1963, and recorded in said Registry Office in Liber 4630 on Page 64.

SUBJECT, HOWEVER, to that certain Declaration made by THE KAUAIAN DEVELOPMENT COMPANY (no date) acknowledged October 10, 1962 and recorded in said Registry Office in Liber 4386 on Page 435 in compliance with the provisions of the Horizontal Property Regimes Act 180, Session Laws of Hawaii, 1961, as amended. Said Declaration was amended by instrument dated September 16, 1963 and recorded in said Registry Office in Liber 4595 on Page 598.

TO HAVE AND TO HOLD the same, with all improvements now or hereafter being thereon and all rights, privileges and appurtenances thereto belonging, and the rents, issues and profits thereof, unto the said Mortgagee and its successors and assigns forever.

AND the Mortgagor hereby covenants with the said Mortgagee as follows:

That the Mortgagor is lawfully seized in fee simple of the granted premises and has good right to sell and convey the same as aforesaid; that they are free from all encumbrances SUBJECT, HOWEVER, as aforesaid;

That the Mortgagor will and the Mortgagor's heirs, executors and administrators shall warrant and defend the same unto the said Mortgagee and its successors and assigns forever, against the lawful claims and demands of all persons EXCEPT as aforesaid. . . .

The record fails to disclose an adequate explanation as to why the property was described in the mortgage document as "subject to" the Declaration of a horizontal property regime, had State intended the leasehold to fall within the effect of the mortgage.

That the term "subject to" may mean "limited by," "subordinate to," or "regulated by," is well established. *State v. Willburn*, 49 Haw. 651, 656, 426 P.2d 626, 630 (1967). In the context of this case, the term "subject to" may accordingly serve as a limitation to the interests made subject to the mortgage which, while not creating any affirmative rights in strangers to the mortgage, reserves or excepts from the mortgage the leasehold which has been submitted to the horizontal property regime such that the mortgagee must look solely to the underlying fee simple estate for security. *See Wilson v. Gerard*, 213 Miss. 177, 56 So. 2d 471 (1952); *Cook v. Farley*, 195 Miss. 638, 15 So. 2d 352 (1943); *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965); *Stetson v. Nelson*, 118 N.W.2d 685 (N.D. 1962); *cf. Texaco, Inc. v. Pigott*, 235 F. Supp. 458, 463 (S.D. Miss. 1964) (" 'Subject to' as used in the deed referring to an earlier conveyance or lease means that title passed in the subsequent instrument was 'subject to' to [sic] earlier lease. These words are words of qualification showing the grantor's intent not to grant an absolute title. ") It may be, however, that the term "subject to" in this case indicates merely that the property covered by the mortgage instrument is regulated in part by the Declaration filed pursuant to the Horizontal Property Regime Act. Under this interpretation, the mortgagor's leasehold interest in the condominium units could be reached by the mortgagee as an improvement to the land mortgaged, subject only to the regulations prescribed by the horizontal property regime.

It is a fundamental rule that any ambiguity in a mortgage instrument should be construed against the party drawing the documents. *See Plan Investments, Inc. v. Carmon*, 215 So. 2d 563, 565 (La. Ct. App. 1968); *Bank of Ephraim v. Davis*, 559 P.2d 538, 540 (Utah 1977); *see also Capocasa v. First National Bank of Stevens Point*, 36 Wis. 2d 714, 720-21, 154 N.W.2d 271, 274-75 (1967). Since the mortgage instrument in this case is ambiguous as to the legal effect of the "subject to" clause over the property mortgaged, it appears to this court that the ambiguity as to the extent of such subjugation should be resolved against the mortgagee State Savings, as framer of the document. Especially is this result warranted where the

interests of a party not privy to the mortgage contract are sought to be encumbered. *See* HRS § 506-4.

We therefore find, as a matter of law, that the leasehold estate subject to the horizontal property regime was, for purposes of the mortgage, reserved or excepted from the fee simple estate. Accordingly, parties purchasing condominium units either prior or subsequent to the execution of the mortgage instrument took free and clear of the mortgage lien.

The mortgage instrument as construed disposes of the first two issues tried on remand.[5] Our construction of the instrument places all the purchasers of the condominium units in the same position without regard to whether the purchase contracts were made before or after January 17, 1964 (date of the mortgage), and makes State's knowledge of the contracts before that date no longer of significance.

We, thus, affirm Conclusions of Law Nos. 2, 3 (though the record does not support the trial court's conclusion regarding estoppel, materiality thereof no longer exists) and 5.

The issues with respect to subordination remain for resolution.

### III.

By document dated July 6, 1964, KDCI conveyed fee title to KLCI, which gave back ML2. The deed and ML2 are specifically subject to the State Savings/KDCI mortgage, and ML2 requires the lessee to pay the mortgage debt when due. State contends that purchasers whose interests were originally prior to the mortgage gave up that priority. State argues that this occurred as a result of the following:

1. The condominium unit purchasers agreed to amend their contracts of sale on or about July 1964. State alleges that each purchase contract was amended by substituting ML2 for ML1 and obligating the purchasers

---

[5] We note that the trial court in its resolution of the issues did not resolve the question of the extent of the purchasers' interests as distinct from their priority over State's mortgage lien.

to perform the obligations of ML2, which included payment of the mortgage.

2. The condominium deed under which the purchasers in this case claim were prepared, executed and recorded after ML2 and are subject to the terms and conditions in ML2.

The trial court's Finding of Fact No. 7 states that "the condominium apartment owners did not subordinate their interests in their respective leasehold condominium apartments to the State Savings mortgage." Conclusion of Law No. 1 is to the same effect. There are no helpful findings of evidentiary facts on the disputed factual issues relating to subordination.

We believe, however, that the trial court's Finding No. 7 and Conclusion No. 1 can be sustained based on the legal effect of the documents. In our opinion, even if the facts are all as State contends, the documents on which State relies were not sufficient on their face to subordinate the purchasers' interests to the lien of the State's mortgage.

## A.  *The Amended Contracts*

State asserts that all of the original purchase contracts are on the same printed form, with variances in the typed portions. The relevant paragraphs of the original printed form read:

1. Seller does hereby agree to sell and the Purchaser to buy that certain CONDOMINIUM hotel unit no. _____ in "The Kauaian", containing an area of _____ sq. ft. more or less, as more particularly described in the Declaration recorded in the Bureau of Conveyances and in plans on file, both of which are hereby referred to and made a part hereof by reference, PAYING THEREFOR to the Seller the sum of $_____ as follows:

.    .    .    .

8. *Maintenance Expense*. Each month, after Purchaser's unit is ready for occupancy, the Purchaser shall pay a PRO RATA share (determined by the ratio which

the floor area of Purchaser's unit bears to the total floor area of all units) of (a) expenses of administration, including 7% of the total income and receipts from unit rentals to the manager as a fee for supervisory services; (b) repairs, maintenance and replacement of buildings, equipment and furnishings; (c) operating costs and expenses; (d) land lease rent, taxes, utilities and insurance; (e) furnishings for units and common areas; (f) reserve for amortization of expenses.

9. *Description of Land*. The Land is a 55-year Leasehold with option to purchase. The Master Lease is recorded in the Bureau of Conveyances of the State of Hawaii in Book 4350 at Page 453, and is hereby referred to and made a part hereof as fully as if it were set out at length herein. Purchaser shall perform, pro rata, the terms and conditions of the Master Lease with NO RESPONSIBILITY for the obligations of other co-owners.

By the amendments, paragraph 9 of each purchase contract was allegedly amended to read as follows (deleted language bracketed and new language underlined):

9. Description of Land. The land is a 55-year *master* leasehold with *10-year* option to purchase *in fee*. The Master Lease is recorded in the Bureau of Conveyances of the State of Hawaii [in Book 4350 at Page 453] *as Document No. 21177,* and is hereby referred to and made a part hereof as fully as if it were set out at length herein. Purchaser shall perform pro-rata the *relevant* terms and conditions of the Master Lease [with no responsibility for the obligations of other co-owners].

State argues that the purchase contract amendments in effect substituted ML2 for ML1.[6] Since ML2 is subject to the

---

[6] ML1 is a lease from the Marchettis, who were the original owners, to Kauaian Development Company, dated August 29, 1962, and recorded in Book 4350, at Page 453. ML2 is a lease from KLCI to KDCI, dated July 6, 1964, and recorded in Book 4787, at Page 5, as Document No. 21177. The description of the land in the Declaration of the horizontal property regime recorded in Book 4386, at Page 435, refers to the "55 year lease recorded in Bureau of Conveyances of the State of Hawaii in Book 4350 at Page 453 . . . ."

mortgage and obligates the lessee to pay the mortgage, State argues that the amended purchase contracts were subject to the mortgage and obligated the purchasers to pay the mortgage.

In our opinion the amended contracts continue to have as their subject matter condominium units under ML1 and do not incorporate the terms and provisions of ML2. It is our opinion that the alleged purpose of substituting ML2 in the contracts was not achieved for the failure of KDCI properly to amend the Declaration filed herein to reflect a substitution of ML2 for ML1.

Although the Declaration, filed pursuant to the Horizontal Property Act, is not identified by recording data, the reference in each contract of the condominium unit as being described in the Declaration and plans on file can have referred only to the Declaration which is in evidence and which describes the property as ML1. Our prior opinion established, as the law of this case, that the contracts created interests in a leasehold condominium under ML1 and the Declaration. The amended paragraph 9 continued to conform to this interpretation, except for the substitution of the recording reference of ML2 (document number) for that of ML1 (book and page number). Since ML2 is not subject to the Declaration, if the amendment is held to have substituted ML2 in the contracts they would have ceased to be effective as contracts for the purchase of condominium units and would have become largely or wholly, meaningless. In order to give meaning to the amended contracts, the amendment of the recording reference in paragraph 9 has to be disregarded, leaving the contracts as yet referring to ML1 and binding the purchasers with respect to the terms of ML1.

The basic concept is that the Declaration creates a species of real property and defines the rights of apartment owners. If an amendment of a master lease which is not reflected in the Declaration is permitted to affect the rights and interests in the apartments, the result is the same as though a condominium had been created without a statutory Declaration. In our opinion this violates the letter of the Horizontal Property Act, as it existed both before and after 1963, and seriously

impairs the objective of the statute of promoting the marketability of condominium apartments. We must conclude, therefore, that ML2 did not amend ML2 so far as ML1 defines the interests of owners of apartment units under the Declaration.

Further, we do not believe that purchasers were properly notified, as required under Act 180 §§ 2-26, 1961 Hawaii Session Laws,[7] of any obligation to make the mortgage payments owing State by KDCI. Section 26 states that:

> It is unlawful for the developer of the project, after it is submitted to the commission, to materially change the set-up or value or use of such offering without first notifying the commission in writing of such intended change and substantially notifying all purchasers and prospective purchasers of such change.

This court finds that the requirement of "substantially notifying all purchasers" of the material change which would render the unit owners liable to State for the mortgage on the underlying fee was not met by the mere substitution in the recording reference of ML2 for ML1. The amendment, to the extent that it attempts such a change without proper notification to the purchasers, is void.[8]

---

[7] This case is governed by Act 180, 1961 Haw. Sess. Laws, as amended by Act 9, 1962 Haw. Sess. Laws. The condominium law was rewritten by Act 101, 1963 Haw. Sess. Laws, with a saving clause which preserved prior law with respect to the rights, interests and remedies of all persons then owning interests in or liens upon any property subject to a horizontal property regime.

[8] It may further be noted that, if anything, the record indicates that the purchasers were misled by KDCI as to the significance of the amendments to the purchase contracts.

In the transcript of the original trial, Corey testified to the effect that a package was mailed to the unit purchasers with a receipt to be signed and returned, reading as follows:

This will certify that I (we) have received, read, understand and approve the terms, conditions and contents of the below-listed documents.
  1. Copy of Proposed Final Amended Supplementary Public Report.
  2. Copy of Leasehold Condominium Deed.
  3. Copy of proposed amendments to Contract of Sale.

A progress report to apartment purchasers from KDCI appears to have been

## B. *The Condominium Deeds*

State contends that each purchaser claims under a condominium deed which precludes the purchaser from asserting priority over State's mortgage. The argument is to the effect that the sales contracts merged into the deeds, which deeds incorporate KDCI's obligations under ML2 and therefore render the interest acquired by the purchaser subject to State's mortgage.

The deeds are strange documents. The deeds purport to convey to each purchaser an exclusive right for 55 years in a designated unit, together with a pro-rata undivided interest in the common elements. Each unit is conveyed "together with" an undivided interest in an accompanying lease from KDCI to

---

included in the package mailed to each purchaser. The progress report reads, in part, as follows:

To provide additional safety and for financing purposes, the land was transferred to Kauaian Land Company, Inc. instead of retained by Kauaian Development Company, Inc. Officers of Kauaian Land Company, Inc. are the same principals as Kauaian Development Company, Inc. *The land will remain pledged and mortgaged as our additional guarantee for individual apartment owners financing requirements.* The two modifications as detailed above do not affect the 10 year option to purchase the land that the Council of Co-Owners have nor do the modifications actually affect the ownership or income from apartment rentals in Hyatt House Kauai.

It has necessitated a sizeable amount of paper work in order to remedy the situation. The changes have been filed at the Real Estate Commissioner's office in Honolulu and copies are enclosed for your notification. We are sorry that so many papers had to be forwarded to modify the various agreements but it appears to be necessary. We hope the changes will provide the apartment owners with additional protection and are in the interest of everyone concerned. Fortunately, *the changes do not affect the income, basic ownership of the individual apartments, nor does it affect any of the other documents that everyone recently executed and notarized. It does, however, by various legal interpretations, provide maximum protection for the individual apartment owners which has been our basic intent from the beginning.*

Please sign the sheet on the line marked for your signatures by a red asterick and forward *immediately in the stamped addressed envelope enclosed. Do not return any of the other documents as they were prepared to be retained in your files. The cooperation that everyone has given us in the past relative to signing the various documents that we have needed has been greatly appreciated and we certainly hope that you will comply with this request to enable everyone concerned to proceed with the proper registrations required.

(Emphasis added)

the purchaser, of the same date, and is also made subject to that lease by a separate paragraph.[9] The deeds are also "further subject" to ML2, which is described as a lease from KLCI to KDCI dated July 6, 1964, with full recording information. Although the last paragraph of the deeds recites that each such transfer shall be deemed a "long-term Hawaiian leasehold conveyance" to be construed in accordance with the Horizontal Property Act of 1961, as amended in 1962, the deeds nowhere make reference to the Declaration.

Our conclusion reached in Section II of this opinion becomes determinative here. It is clear that the only property to which the description in each deed can apply is a condominium unit created by the Declaration. The deeds thus operate to transfer the interests in the condominium units which KDCI held under the Declaration and its subject master lease, ML1. As against the purchasers, the mortgage did not impose a lien on the interests which KDCI held in the condominium units, and the purchasers acquired their interests under the deeds free from the lien of the mortgage.

However, State contends that the purchasers are precluded from denying that their interests are subject to the mortgage, by reason of the recital in each deed that such deed is "subject to" the terms and conditions of ML2. State argues that the recital limits the estate transferred by the deed by being a burden on the estate which the purchaser may not reject while taking the benefits of the transfer.

In our opinion, the recital is insufficient in form to burden a purchaser's estate with the lien of State's mortgage. The overriding purpose and effect of the deed was to transfer an existing legal estate in a condominium unit under the Declaration, which estate could only be a leasehold interest under ML1. If the draftsman intended the deed as a transfer of an interest under ML2, a recital that the deed was "subject to" ML2 was an inept way of expressing this intent in view of the variety of meanings attributable to the term. See discussion of

---

[9] In presenting its argument, State relies only on the deeds and does not mention the accompanying leases.

the term "subject to," *supra* at Section II. The same principles of strict construction which we invoked against State under Section II of this opinion may be applied against KDCI. KDCI, the grantor, prepared the deeds; any ambiguity must accordingly be resolved in favor of the grantees. *See State v. Hawaiian Dredging Co.*, 48 Haw. 152, 178, 397 P.2d 593, 608 (1964); *Ahmi v. Waller*, 15 Haw. 497, 499 (1904); *Bruch v. Centerview Community Church, Inc.*, _____ Ind. App. _____, _____, 379 N.E.2d 508, 510 (1978); *Farmers Canal Co. v. Potthast*, 587 S.W.2d 805, 808 (Tex. Ct. App. 1979); *Carr v. Burlington Northern, Inc.*, 23 Wash. App. 386, _____, 597 P.2d 409, 411 (1979).

Further, and perhaps most importantly, the terms of ML2 do not obligate the purchasers personally to pay any portion of the mortgage debt. If ML2 did not otherwise affect the condominium estate created by the Declaration, the deed recital could not, by itself, give it that effect.

## C. The Sheraton Agreements

It was State's contention on this appeal that the condominium unit purchasers subordinated their interests to the State Savings/KDCI mortgage, first, by the amendments to the condominium contracts of sale and, second, by the condominium deeds executed and recorded after ML2. We have rejected State's contention that the purchasers' interests were subordinated by these documents.

State has not contended that the Sheraton agreements, documents which purport to amend the condominium deeds and accompanying leases,[10] affect the rights of the pur-

---

[10] As stated in our prior opinion in this case:

   Late in 1964, the Corporation and all but seven of the purchasers executed a document which purported to amend the leases and deeds and completely supersede the contracts of sale. It provided that the purchasers' interests in the individual units, as well as in the land and the common elements, were subject to State Savings' mortgage. The documents were executed at the request of Sheraton Corporation of America in anticipation of the latter's proposed purchase of the project which failed to materialize.

50 Haw. at 545, 445 P.2d at 114.

chasers other than as admissions against interest.[11] In light of our analysis rejecting State's major contention, the claim of admissions against interest is without consequence.

However, although State has not contended that the Sheraton Agreements modified the pre-existing interests of the purchasers so as to render them subject to the mortgage, we believe it appropriate to raise this issue sua sponte.

All of the Sheraton agreements follow the same format and incorporate the same terms, differing only in the names of the lessee, the date of the original contract of sale, recordation statistics, and the lease number.

Paragraph I of the form agreement purports to amend the Declaration by deleting a paragraph relating to the ownership of premises received for commercial purposes.

Paragraph II of the form agreement purports to amend in its entirety the leases dated July 1, 1964 from KDCI to each purchaser. The substituted lease demises and leases "that

---

[11] State claims that the following recitals from the Sheraton agreements constitute admissions by the purchasers that they stood subject to the mortgage by virtue of having consented to the amendments to the contracts of sale:

That whereas, by instrument dated October 17, 1962, recorded in the Bureau of Conveyances of the State of Hawaii in Liber 4386, Page 435, Kauaian Development Company submitted certain property to the Horizontal Property Regime Act of 1961, and this instrument was amended by amendment dated September 16, 1963, recorded as aforesaid in Liber 4595, Page 598; and

Whereas the Lessor and the Lessee entered into a contract of sale dated _____ wherein the Lessor agreed to convey a unit in The Kauaian Hotel; and

Whereas, said contract of sale was subsequently amended by agreement dated _____, and

Whereas, under date of July 1, 1964, Lessor entered into an indenture of lease with Lessee demising undivided interests in certain property; and

Whereas, under date of July 21, 1964, Lessor issued a leasehold condominium deed to Lessee; and

Whereas, SHERATON HAWAII CORPORATION is currently operating the "SHERATON SEVEN SEAS" located at Poipu Beach, Koloa, Kauai, for and on behalf of the Lessor and Council of Co-Owners; and

Whereas, SHERATON CORPORATION OF AMERICA, a New Jersey corporation, is interested in acquiring the stock of Lessor and Kauaian Land Company, Inc.; and

Whereas, the President of the Council of Co-Owners and SHERATON CORPORATION OF AMERICA mutually desire to secure one consolidated document clarifying the relationship between the Lessee and the Lessor.

certain apartment hotel unit no. _____ in the Sheraton Seven Seas . . . together with a _____ per cent (_____%) undivided interest as a tenant in common in the general common elements of the property" for a term of 55 years:

Subject, however, to:

That certain declaration dated October 17, 1962, recorded as aforesaid in Liber 4386, Page 435, as amended by instrument dated September 16, 1963, recorded as aforesaid in Liber 4595, Page 598, as amended by this instrument and that certain mortgage to which Lessee consents made and executed by and between the Lessor and State Savings & Loan Association dated January 17, 1964, recorded in aforesaid in Liber 4670, Page 119.

Paragraph H of the mutual covenants of the amended lease provides that each "lease is and shall be subject to any subordination, pledge, hypothecation or mortgage by the Lessor of the Lessor's fee simple interest in and to the above described land."

The form Sheraton agreement goes on to provide that:

III. Lessee and Lessor agree that said leasehold condominium deed dated July 21, 1964 issued by Lessor to Lessee and recorded as aforesaid in Liber _____, Page _____, be and hereby is amended insofar as it may be inconsistent herewith.

.   .   .   .

VII. This agreement has been accepted by the Lessee in full satisfaction of the provisions of the Lessor's obligations under that certain unrecorded contract of sale dated _____ by and between Lessor and Lessee.

As in our discussion of the terms of ML2, *see* Sections III.A and III.B., *supra*, we find nothing in the Sheraton agreements which should be read as *creating* a lien which did not already exist. Paragraph H of the amended leases states that each lease is "subject to". any mortgage of the Lessor's fee simple interest. We construe this merely as *recognizing* and acknowledging the rights of State under its mortgage upon the fee, but not as creating any lien upon the condo-

minium units which the mortgage had not created by its own terms.

Accordingly, we affirm the denial of a new trial as to Conclusions of Law Nos. 1, 2, 3 and 5. Conclusions of Law Nos. 4, and 6 to 10, however, are vacated, subject to new trial on remand.

*James S. Campbell (Cades Schutte Fleming & Wright* of counsel) for plaintiff-appellant.

*Helen B. Ryan (Ryan & Ryan* of counsel) and *Reuben S. F. Wong* for certain defendants-appellees.

With them on the briefs were *Milton W. B. Choy; Charles W. Key (Damon Key Char & Bocken* of counsel); and *Kenneth G. K. Hoo (Fong Miho & Robinson* of counsel) for certain defendants-appellees.