683 P.2d 891

INVESTORS LIMITED OF SUN VALLEY, a general partnership, Plaintiff-Respondent,

v.

SUN MOUNTAIN CONDOMINIUMS, PHASE I, INC. HOMEOWNERS ASSOCIATION, Defendant-Appellant.

No. 14078.

Court of Appeals of Idaho.

June 26, 1984.

Lawrence J. Young, Ketchum, for defendant-appellant.

Rand L. Peebles and Edward A. Lawson of Lawson & Peebles, Ketchum, for plaintiff-respondent.

SWANSTROM, Judge.

Investors Limited of Sun Valley (Investors), as the present developer of the Sun Mountain Condominium project, filed suit against Sun Mountain Condominiums Homeowners Association seeking a declaratory judgment holding that it has voting rights in the Association. The Association filed an answer, denying that Investors had any voting rights in the Association. The district court granted Investors' motion for summary judgment and held that it had voting rights in the Association proportional to its share of ownership in the common area of the project. The Association appeals. We reverse.

The issue in this case is whether Investors is the "owner" of platted but *unbuilt* condominium units and is thereby entitled to voting rights in the Association, the "management body" of the condominium project. We hold that Investors is not an owner, but limit our holding to the facts in

this case and base it upon the particular language in the condominium documents.

The facts in this case are not disputed. In 1972 a condominium declaration and plats for the Sun Mountain Condominiums, Phase I, were filed with the Blaine County Recorder. The project, to be built in Ketchum, Idaho, was to consist of three buildings, each containing four units, on a parcel of approximately one acre. The original developer built one of the buildings shown on the plats and sold the first four units to individual purchasers. The remaining two buildings are yet to be built.

In September of 1979, Investors purchased the Sun Mountain project from the original developer. Later, Investors submitted to the City of Ketchum amended plans for the project, showing that three additional buildings would be built on the remaining land, rather than two as shown on the original plats. The Association, consisting of the owners of the four units in the building that had been completed, objected to Investors' new plans which would significantly reduce each owner's share of the common area.

Under Idaho law, prior to the first sale of a condominium, the declaration and the plat or plats may be amended or revoked by a subsequently recorded instrument executed and acknowledged by the record owner and the holder of any recorded security interest in all of the property comprising the condominium project. I.C. § 55–1504. However, after the first sale of a condominium, the declaration and plats can be amended only if the proposed amendment is consented to by the requisite percentage of "the voting power of the owners of the project," always more than fifty percent, as specified in the declaration. I.C. § 55–1505(2)(k). Here the declaration recorded by the declarant in 1972 stated:

> This Declaration shall not be revoked nor shall any of the provisions herein be amended unless the Owners representing an aggregate ownership interest of 85%

or more of the Condominiums, as reflected on the real estate records of Blaine County, Idaho ... consent and agree to such revocation or amendment by instruments duly recorded.

It is undisputed that the four owners of the completed condominiums represent an aggregate ownership of thirty-three percent of the total condominiums originally planned and platted for Sun Mountain Condominiums, Phase I. The original developer had never voted in, attempted to control or to manage the Association, nor had it ever been assessed or paid any of the assessments of the Association. The owners of the four completed units comprised the Association and paid one hundred percent of all of its assessments. All four owners opposed Investors' plans to add an additional building to the project. However, to overcome the Association's resistance to its plans, Investors tried to gain control of the Association by asserting its voting rights as the "owner" of eight *unbuilt* condominium units.[1] The Association rejected Investors' claim of voting rights and refused to allow it to participate in Association affairs. Investors then filed this suit.

The increasing popularity of the condominium form of ownership led the Idaho Legislature in 1965 to adopt the Condominium Property Act in order to clarify the concept of "holding property in the condominium estate" and to "permit and facilitate the construction and development of condominiums and condominium projects." I.C. § 55–1502. A condominium project is created once there has been substantial compliance in good faith with the provisions of I.C. § 55–1504. To create a condominium project under that section, several things must occur: (1) a declaration, together with a plat or plats, must be recorded in the county where the project is to be located; (2) the recorded documents must express an intent to create a project subject to the provisions of the Act; and (3) among the documents there must be (i) a

---

1. The actual number of votes which can be cast by a member of the Association is determined by that member's percentage interest in the common area, as shown by an exhibit filed with the condominium declaration. This percentage interest can vary from unit to unit.

plat or map of the project; (ii) diagrammatic floor plans of the building or buildings; and (iii) a certificate executed and acknowledged by the record owner of the project consenting to the recordation of the documents.

█ The declaration which must be filed to create a condominium project is essentially a master deed which defines the rights and duties of the developer, the owners of the individual condominium units and the management body of the project. Idaho Code § 55–1505 specifies what must be included in the condominium declaration: (1) a legal description of the land within the project; (2) a legal description of each unit in the project; and (3) the percentage of ownership interest in the common area to be allocated to each unit for the purpose of tax assessment. It is not disputed that the documents for creation of Sun Mountain Condominiums, Phase I, filed with the Blaine County Recorder in 1972, created a condominium project as defined and governed by the Condominium Property Act.

Section 8.1 of the Sun Mountain Condominium Declaration designates the Association as the "management body" of the condominium project. The remaining sections of Article VIII of the declaration set forth the duties and rights of the Association. Among other things, the Association is given responsibility for management and control of the common area, maintenance and repair of the buildings, and landscaping. The Association has the right to obtain professional services to help carry out its duties and it has the authority to make reasonable rules to govern the use of the units and the common area.

A key provision of the declaration is section 7.1 which states: "Every Owner shall be entitled and required to be a member of the Association .... No person or entity other than an Owner may be a member of the Association." Investors contends that, as the record owner of the entire unimproved and unsold portion of the project, it is an "owner" and is entitled to membership in the Association. The Association contends, on the other hand, that the term "owner" refers only to the owners of condominium units which have been built and are physically extant.

Investors, at oral argument, contended this project was to be developed in stages, indicating an intent that the term "owner" should apply to all platted condominiums, whether built or unbuilt. Arguably, the use of the term "Phase I" implies that other phases could follow, but that argument invites us to speculate on things outside the record. This we will not do. The record before us indicates that all three buildings platted in Phase I of the project were to be built and offered for sale at the same time. This is reflected in several parts of the recorded declaration.

█ As explained below, we think the term "owner," as used in the declaration, is unambiguous. A plain reading of the declaration supports the Association's position that "owner" is defined by reference to physically existing units. However, we note at the outset that even if the definition were susceptible of differing interpretations, in this instance we would reach the same result. Investors' predecessor was the "declarant" who prepared and filed the condominium declaration in 1972. The predecessor chose the language used in the declaration to define membership rights and voting rights in the Association. The declarant could easily have made clear, specific provisions in the declaration for retaining some control in the Association until all or part of the units were completed and sold, if this was the intent. Because the declaration was drafted by Investor's predecessor in interest, the basic tenets of contract law require that we construe the provisions of the document in favor of the nondrafting party. *See Hillside Service Co. v. Alcorn*, 105 Idaho 792, 673 P.2d 392 (1983) (construing terms used in a "Declaration of Restrictive Covenants"); and *Council of Unit Owners of Pilot Point Condominium v. Realty Growth Investors*, 436 A.2d 1268 (Del.Ch.1981) (construing language of a recorded condominium declaration).

■ Moreover, the condominium statutes do not require any deviation from a plain reading of the declaration. The Condominium Property Act (1965 Idaho Sess.Laws, chapter 225, p. 515) is a "first generation" act that is yet to be amended. Unlike many modern statutes governing development and sales of condominiums, the Idaho law does not prohibit or restrict the developer from retaining control over the managing body of condominium owners by reason of the developer's ownership of built but unsold units. The Idaho act is simply silent on the subject. *Compare, e.g.,* Fla. Stat. §§ 718.301, 302 (1981). *See also* P.J. ROHAN, THE "MODEL CONDOMINIUM CODE"—A BLUEPRINT FOR MODERNIZING CONDOMINIUM LEGISLATION, 78 COLUM.L.REV. 587–608 (1978). On the other hand, there is nothing in the Idaho act that suggests the term "owner" as defined in the declaration here should be construed to include ownership of unbuilt units.

■ We now focus upon the declaration itself. Section 2.7 defines "owner" as "any person or entity, including Declarant, at any time owning a condominium." Condominium is defined by the declaration as follows:

"Condominium" means a separate interest in a Unit together with an undivided interest in common in the Common Area (expressed as a percentage of the entire ownership interest in the Common Area) as set forth in Exhibit B attached hereto and by this reference made a part hereof.

A unit is defined more specifically in section 2.2 of the declaration as follows, in part:

"Unit" means the separate interest in a condominium as bounded by the interior surface of the perimeter walls, floors, ceilings, windows and doors thereof and the interior surfaces of the built-in fireplaces as shown and numbered on the condominium map to be filed for record, together with all fixtures and improvements therein contained.

Section 1.4 of the declaration recites: "This condominium project will provide a means for ownership in fee simple of separate interests in Units and for co-ownership with others, as tenants in common, of Common Area, as those terms are herein defined." Section 4.1 recites

The project is hereby divided into Condominiums, each consisting of a separate interest in a Unit and an undivided interest in common in the Common Area in accordance with the attached Exhibits A & B setting forth the Common Area appurtenant to each Unit. The percentage of ownership interest in the Common Area which is to be allocated to each Unit for purposes of tax assessment under Section 55–1514 of the Idaho Code and for purposes of liability as provided by Section 55–1515 of such Code shall be the same as set forth in Exhibit B. Exhibit B also contains a legal description of each Unit in Building [blank] consisting of the identifying number of such Unit as shown on the Condominium Map. Such undivided interests in the Common Area are hereby declared to be appurtenant to the respective Units.

According to section 2.4, "Building means one of the buildings constructed on the Real Property pursuant to this Declaration, excepting all automobile parking structures."

Sections 4.4 and 4.5 state:

Title to a Condominium may be held or owned by any entity and in any manner in which title to any other real property may be held or owned in the State of Idaho.

No part of a Condominium or of the legal rights comprising ownership of a Condominium may be separated from any other part thereof during the period of Condominium Ownership prescribed herein, so that each Unit and the undivided interest in the Common Area appurtenant to such Unit shall always be conveyed, devised, encumbered, and otherwise affected only as a complete Condominium. Every gift, devise, bequest, transfer, encumbrance, conveyance or other disposition of a Condominium or any part thereof shall be presumed to be a gift, devise, bequest,

transfer, encumbrance, or conveyance, respectively, of the entire Condominium; together with all appurtenant rights created by law or by this Declaration.

It is clear from the foregoing provisions that to be an "owner"—and thus a member of the Association—one must own a condominium. A condominium does not exist under this declaration unless there is *both* ownership of a separate interest in real property (a unit) and an undivided interest in real property (the common area of the project). A developer, like anyone else, must have both interests before he is a "owner" within the meaning of the declaration. The declaration treats a "unit" as part of a "building" and refers to "building," in section 2.4, as one of the buildings *constructed* on the property.

We do not question that Investors is a "record owner" of the property committed to the Sun Mountain Condominiums, Phase I project who has a "real property" interest in that project. I.C. § 55–1505. Likewise, in construing the term "owner" as used in this declaration, we are not suggesting that either a developer or a purchaser of an unbuilt condominium has no recognizable real property interest in a unit. That question is not before us. It may well be that, in spite of historic and long-standing prohibitions to the contrary, a developer can enter into valid contracts to sell "future interests" in unbuilt condominiums once statutory requirements for filing declarations, plats and other documents have been met. *See, e.g., State Savings & Loan Association v. Kauaian Development Company, Inc.,* 50 Hawaii 540, 445 P.2d 109 (1968), *modified in appeal taken after remand,* 62 Hawaii 188, 613 P.2d 1315 (1980). Recognition of this concept implies that contract purchasers of planned but unbuilt condominiums can acquire equitable ownerships of a real property interest in the "property" as defined by I.C. § 55–1503(c). The district judge here indicated his awareness of the public policy stated in the Condominium Property Act "to permit and facilitate the construction and development of condominiums and condominium projects, together with the financing of the same."

I.C. § 55–1502. He expressed the view that practical considerations in condominium development, financing and sales require courts to willingly accept and clearly define this "new" form of property ownership. He stated that "common practice in the selling of condominiums necessitates a finding that parties do own condominiums before they are built." We are not challenging that statement here. We are not called upon to determine the broad range of ownership rights. We are simply construing the language employed in this particular declaration, which defines membership rights in the Association.

We conclude that because Investors is not an "owner" of a condominium it is not entitled to membership in the Association. Accordingly, we reverse the summary judgment order and remand for further proceedings.

Costs to appellant. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.