142 P.3d 265

Jon S. Logan **WRIGHT,**
**Plaintiff–Appellant,**

**v.**

**HOME DEPOT U.S.A., INC.,** a foreign corporation authorized to do business in the State of Hawai'i, Defendant–Appellee,

and

**John Does 1–50, Defendants.**

**No. 27190.**

Supreme Court of Hawai'i.

Aug. 30, 2006.

Meyer M. Ueoka (of Ueoka & Ueoka), on the briefs, Wailuku, for plaintiff-appellant.

Jeffrey S. Harris and Jan Muranaka Boivin (of Torkildson, Katz, Fonseca, Moore & Hetherington), on the briefs, Honolulu, for defendant-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

This appeal concerns the sole question whether an employer—in this case, defendant-appellee Home Depot U.S.A., Inc. [hereinafter, Home Depot]—can legally terminate an employee—here, plaintiff-appellant Jon S. Logan Wright—because of his prior criminal record, pursuant to Hawai'i Revised Statutes (HRS) § 378–2.5 (Supp.2002), relating to employers' inquiries into criminal conviction records, quoted *infra*. Briefly stated, Wright was terminated from his employment with Home Depot as an associate sales clerk in its lumber department at Kahului, Maui because of his prior conviction for use of a controlled substance by the Washoe Second Judicial District Court, Reno, Nevada. Wright brought a wrongful discharge and discrimination action against Home Depot, alleging primarily that Home Depot's conduct violated HRS § 378–2 (Supp.2005), quoted *infra*. The Circuit Court of the Second Circuit, the Honorable Shackley F. Raffetto presiding, disagreed with Wright and granted Home Depot's motion to dismiss,

entering final judgment, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (2004),[1] on February 28, 2005.

On appeal, Wright raises the following points of error. First, Wright contends that the circuit court erred in applying HRS § 378–3(13) (Supp.1998) (authorizing employer to consider individual's criminal record with regard to employment), quoted *infra*, because subsection 3(13) was repealed and, thus, not in effect at the time of his employment or at the time of his termination. Second, HRS § 378–2.5, concerning employers' inquiries into conviction records, was likewise erroneously relied upon by the court because the statute applies only to a prospective employee or to one who was convicted of a criminal charge during employment. In other words, Wright maintains that HRS § 378–2.5 does not apply to an employee who had an existing criminal record prior to employment. And, third, to the extent that HRS § 378–2.5 is applicable, Wright contends that his prior conviction does not bear a "rational relationship" to his employment as required by the subject statute, thereby rendering the dismissal of his complaint inappropriate.[2]

For the reasons discussed herein, we vacate the circuit court's February 28, 2005 final judgment and remand this case for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual Background

It is undisputed that, prior to his employment with Home Depot, Wright was convicted of using a controlled substance, *i.e.*, meth-

---

1. HRCP Rule 54 provides in relevant part:
   (b) *Judgment upon multiple claims or involving multiple parties.* When more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any ... form of decision ... which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[.]

(Emphasis in original.)

2. In addition to his claim of violation of HRS § 378–2, Wright also alleged that Home Depot violated the fundamental public policies underlying HRS § 378–2 and section 5 of the Hawai'i Constitution, entitled "Due Process and Equal Protection." Wright, however, does not raise any point of error regarding the circuit court's dismissal of his violation of public policy claims. Therefore, this court need not address them. *See* Hawai'i Rules of Appellate Procedure Rule (HRAP) Rule 28(b)(4) (2004) ("Points not presented ... will be disregarded[.]").

amphetamine. On April 30, 1996, Wright pled guilty to the drug charge before the Washoe Second Judicial District Court in Reno, Nevada (Case No. CR96–0577) and was sentenced to a term of imprisonment of twelve to thirty-six months [hereinafter, the 1996 drug conviction]. The sentence was suspended, and he was placed on probation not to exceed two years. On November 5, 1997, Wright was discharged from probation.

Approximately three and a half years later, Home Depot hired Wright on or about April 21, 2001 as an associate sales clerk in its lumber department at Kahului, Maui. At the time of his hiring, Wright was tested for drugs; the results were negative. The record does not indicate (nor do the parties explain) whether the drug testing is part of Home Depot's standard employment process, *i.e.*, whether hiring of a prospective employee is conditioned upon a negative drug screen. Moreover, neither the parties nor the record indicate whether Home Depot conducted a criminal history record check prior to employing Wright. Based on the facts of this case, it appears it did not, and it also appears that Wright did not disclose the existence of his 1996 drug conviction at the time he was hired.

In September 2002, Wright applied for a promotion as department supervisor. During the promotion review period, Wright was tested twice for drugs; the results were negative.[3] Home Depot also initiated a background investigation on Wright in connection with his application for the promotion. On November 22, 2002, Home Depot informed Wright, via a letter by its Human Resources manager, that it had obtained a "Consumer Report" in connection with Wright's application for the supervisory position. The letter indicated that,

[b]ased in part upon information contained in the Consumer Report, [*i.e.*, Wright's prior drug conviction, Home Depot was] considering taking adverse action. Depending on the circumstances, adverse action could involve not offering you the position, termination of your employment, or some other action.

Eventually, Wright was terminated from his employment with Home Depot, effective December 17, 2002, because of his "felony conviction disposition 04–30–96, use of [a] controlled substance, in violation of company policy."

## B. *Procedural History*

On April 27, 2004, Wright filed a complaint for wrongful discharge and discrimination against Home Depot.[4] Three days later, on April 30, 2004, Wright filed an amended complaint, alleging, *inter alia*, that Home Depot's conduct in terminating his employment was discriminatory and in violation of HRS § 378–2. HRS § 378–2(1) provides in relevant part:

It shall be an unlawful discriminatory practice:

(1) Because of race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or **arrest and court record:**

(A) For any employer to refuse to hire or employ or *to bar or discharge from employment, or otherwise to discriminate against any individual* in compensation or *in the terms, conditions, or privileges of employment* [.]

(Emphases added.) An "arrest and court record," in turn, includes

*any information about an individual* having been questioned, apprehended, taken into custody or detention, held for investigation, *charged with an offense,* served a

3. As indicated *supra,* the record does not indicate (nor do the parties explain) whether this particular drug screening is part of Home Depot's standard practice when screening employees for promotion. Moreover, there is no indication as to why Wright was tested *twice.*

4. Wright brought suit against Home Depot subsequent to receiving a "right-to-sue" notice from the Hawai'i Civil Rights Commission (HCRC), which, pursuant to HRS § 378–4 (Supp.2005),

"shall have jurisdiction over the subject of discriminatory practices made unlawful by this part. Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice may file with the [HCRC] a complaint in accordance with the procedure established under chapter 368." HRS § 368–12 (1993) provides in relevant part that, "[w]ithin ninety days after receipt of a notice of right to sue, the complainant may bring a civil action under this chapter."

summons, arrested with or without a warrant, tried, *or convicted pursuant to any law enforcement* or military authority.

HRS § 378–1 (1993) (emphases added). Wright also alleged that:

16. The said conviction ... in 1996 for the use of a controlled substance does not bear *a rational relationship to the duties and responsibilities of the position he held* at Defendant HOME DEPOT.

(Emphasis added.)

On May 24, 2004, Home Depot moved to dismiss the amended complaint, pursuant to HRCP Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Home Depot essentially argued that its consideration of Wright's criminal record was appropriate, under HRS §§ 378–2.5 and –3(13), because it bore a rational relationship to his employment and that, therefore, Wright's termination was lawful. Section 378–2.5 provides:

**Employer inquires into conviction record.** (a) Subject to subsection (b), an employer may inquire about and consider an individual's criminal conviction record concerning hiring, termination, or the terms, conditions, or privileges of employment; provided that the conviction record bears a rational relationship to the duties and responsibilities of the position.

(b) Inquiry into and consideration of conviction records for prospective employees shall take place only after the prospective employee has received a conditional offer of employment which may be withdrawn if the prospective employee has a conviction record that bears a rational relationship to the duties and responsibilities of the position.

(c) For purposes of this section, "conviction" means an adjudication by a court of competent jurisdiction that the defendant committed a crime, not including final judgments required to be confidential pursuant to section 571–84; provided that the period for which the employer may examine the employee's conviction record shall not exceed ten years.

(Bold emphasis in original.) (Underscored emphasis added.) HRS § 378–3(13) provided that:

Nothing in this part shall be deemed to:

. . . .

(13) Prohibit or preclude an employer from *considering a record of criminal conviction that bears a rational relationship to the duties and responsibilities of the position, pursuant to section 378–2.5, with regard to prospective or continued employment.*

(Emphasis added.)[5]

Home Depot specifically argued that,

[e]ven if every fact in [Wright's] complaint is assumed to be true, it is clear that [Wright's] drug conviction has a moderate, fair, or reasonable relation to employment at a home improvement retailer with substantial concern for the safety of its customers and employees, for its employee culture, for its goodwill and reputation, and for its interest in maintaining an honest environment.

Home Depot urged the circuit court to apply by analogy the minimum rationality test of the fourteenth amendment's equal protection clause, which "requires the widest discretion to the judgment of the employer," to the facts of this case.

On July 13, 2004, Wright filed a memorandum in opposition to Home Depot's motion to dismiss, arguing that he

was tested for drugs on three (3) separate occasions and found to be negative and clean. It would appear, therefore, that in the spirit of the non-discriminatory law that [Wright] has been rehabilitated and deserves a chance to work. All of this will be proven at the time of trial.

The allegation that[,] effective December 17, 2002, [Wright] was terminated because of his conviction for use of a controlled substance "in violation of company policy," which is not supported by affidavit, is disputed, and the company policy is other-

---

5.  As more fully discussed *infra*, subsection 3(13)     was repealed, effective June 30, 1999.

wise, which will be shown at the time of the trial, only after discovery.

Wright further asserted that:

> There is no ambiguity to § 378–2.5(a), which provides that[,] "subject to subsection (b), an employer may inquire about and consider an individual's criminal conviction record concerning hiring, termination or the terms, conditions or privileges of employment, provided that the conviction record bears a rational relationship to the duties and responsibilities of the position." A resort to legislative history is not relevant and should not be considered. It only adds to the confusion.

Wright maintained that, "[i]f the [c]ourt should grant the [m]otion, it would lead to an absurd result. Section 378–2 ... would be meaningless, and not enforceable."

On July 16, 2004, Home Depot filed its reply to Wright's opposition, pointing out, *inter alia*, that Wright has "completely ignore[d] the legal issue," *i.e.*, whether his 1996 drug conviction is rationally related to the duties and responsibilities of his employment. Home Depot further reminded the circuit court:

> As construed under the Equal Protection Clause, the "rational relationship" standard results in a strong presumption in favor of constitutionality. On a Rule 12(b)(6) motion to dismiss a claim under the Equal Protection Clause, that presumption will result in dismissal unless the [p]laintiff alleges facts sufficient to overcome the presumption.

(Citation omitted.) At the hearing on the motion on July 21, 2004, Home Depot reasserted its position that Wright's prior conviction was rationally related to the duties and responsibilities of his employment. In response, Wright's counsel argued that:

> Rule 8 of the [HRCP] provides that it shall be a simple allegation in the complaint. And all it has to do is give notice to the defendant. In this case here, defendant had received notice that they're being charged or complained against because of the conviction record and the discharge on account of it.

We feel that there's evidence that should be adduced at the trial to—for them to substantiate. I think we would be able to show that the policy of Home Depot is not what they purport it to be.

At the conclusion of the hearing, the circuit court stated that, "after reviewing the memorand[a], I'm persuaded by [Home Depot's] argument that there is a rationale [sic] relationship between the offense that [Wright] was convicted of [and his employment] ... so I'm going to grant the motion." On July 28, 2004, the circuit court issued its written order granting Home Depot's motion to dismiss. Final judgment was entered on August 2, 2004.

On September 1, 2004, Wright filed his notice of appeal. However, this court dismissed the appeal for lack of jurisdiction on February 4, 2005, inasmuch as the August 2, 2004 final judgment "d[id] not state that judgment is entered as to [all] causes of action[.]" Consequently, on February 28, 2005, the circuit court entered a second final judgment in favor of Home Depot as to all counts in the amended complaint. On March 23, 2005, Wright timely appealed.

## II. *STANDARDS OF REVIEW*

### A. *Motion to Dismiss*

A circuit court's ruling on a motion to dismiss is reviewed *de novo*. *Bremner v. City & County of Honolulu*, 96 Hawai'i 134, 138, 28 P.3d 350, 354, *reconsideration denied*, (App.), *cert. denied*, 96 Hawai'i 346, 31 P.3d 203 (2001).

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, *in reviewing [a] circuit court's order dismissing [a] complaint ... our consideration is strictly limited to the allegations of the complaint,*

*and we must deem those allegations to be true.*

*In re Estate of Rogers,* 103 Hawai'i 275, 280–81, 81 P.3d 1190, 1195–96 (2003) (citations omitted) (brackets and ellipsis in original) (emphases added); *see also Aames Funding Corp. v. Mores,* 107 Hawai'i 95, 98, 110 P.3d 1042, 1045, *reconsideration granted in part and denied in part,* 107 Hawai'i 348, 113 P.3d 799 (2005) ("[R]eview of a motion to dismiss is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." (Internal quotation marks, citation, and ellipsis omitted.)).

B. *Statutory Interpretation*

▇▇▇ "The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo.*" *Liberty Mut. Fire Ins. Co. v. Dennison,* 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005) (quoting *Labrador v. Liberty Mut. Group,* 103 Hawai'i 206, 211, 81 P.3d 386, 391 (2003)) (internal quotation marks omitted). In so doing, this court must adhere to the well-established rule of statutory construction that the "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Gray v. Admin. Dir. of Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (citations omitted).

### III. DISCUSSION

As previously indicated, Wright essentially raises three arguments on appeal, to wit, that: (1) HRS § 378–3(13) does not apply because it was no longer in effect at the time of his employment or at the time of his termination, which he raises for the first time on appeal; (2) HRS § 378–2.5 does not apply to convictions that occurred prior to an individual's employment; and, (3) assuming that HRS § 378–2.5 does apply, his prior drug conviction is not rationally related to the duties and responsibilities of his employment. Each of Wright's contentions are addressed in turn below.

A. *HRS § 378–3(13)*

### 1. The Promulgation and Repeal of HRS § 378–3(13)

In 1981, the legislature essentially declared that an employer's refusal to hire, bar, or discharge an employee based upon race, sex, sexual orientation, age, religion, color, ancestry, disability, marital status, or arrest and court record constituted an unlawful discriminatory practice. *See* HRS § 378–2. At the same time, the legislature provided certain exceptions to the foregoing declaration that were codified in HRS §§ 378–3(1) through –3(10). 1981 Haw. Sess. L. Act 94, pt. of § 2 at 185–87; *see also Ross v. Stouffer Hotel Co. (Hawai'i), Ltd.,* 76 Hawai'i 454, 458, 879 P.2d 1037, 1041 (1994) (holding that termination of employment based upon any of the reasons set forth in section 378–2 is a violation of the statute, *unless* the termination falls within one of exceptions set forth in HRS § 378–3).

Since 1981, three new exceptions have been added to HRS § 378–3, one of which is subsection 378–3(13) at issue in this case. *See* 1994 Haw. Sess. L. Act 88, § 2 at 199–200 (adding HRS § 378–3(11)); 1997 Haw. Sess. L. Act 365, § 2 at 1147–48 (adding HRS § 378–3(12)); and 1998 Haw. Sess. L. Act 175, § 2 at 651–52 (adding HRS § 378–3(13)). It is important to note that the legislature established a sunset date of June 30, 1999 in Act 365, stating specifically that:

> [Act 365] shall take effect upon its approval; provided that *this Act shall be repealed on June 30, 1999, and [HRS § ]378–3 ... is reenacted in the form in which it read on the day before the approval of this Act.*

1997 Haw. Sess. L. Act 365, § 4 at 1149 (emphases added).

In 1998, Representative Joseph M. Souki introduced House Bill No. 3528 to abolish the prohibition against employment discrimination based on an arrest and court record. *See* Hse. Stand. Comm. Rep. No. 276–98, in 1998 House Journal, at 95, 1140; Hse. Stand. Comm. Rep. No. 673–98, in 1998 House Journal, at 1300–01. Ultimately, however, the bill modified HRS § 378–2 by enacting a new section, HRS § 378–2.5, quoted *supra. See* 1998 Haw. Sess. L. Act 175, § 1 at 651. In

addition, Act 175 amended HRS § 378–3 to include subsection –3(13), quoted *supra.* In light of the sunset provision contained in section 4 of Act 365, HRS § 378–3 resorted to its pre-Act 365 version (*i.e.,* eleven versus thirteen exceptions) on June 30, 1999, and, thus, both HRS §§ 378–3(12) and –3(13) were effectively repealed as of that date. *See* 1997 Haw. Sess. L. Act 365, § 4 at 1149. HRS § 378–2.5, nonetheless, remains in full force and effect.[6]

### 2. Whether Wright's Contention Should be Noticed as Plain Error

As previously indicated, Wright contends for the first time on appeal that the circuit court "apparently relied on [HRS § 378–3(13),] which is wrong" because subsection (13) was not in existence at the time of his employment or at the time of his termination inasmuch as said subsection was repealed after June 30, 1999.[7] Wright, therefore, urges this court to "notice a plain error not presented, pertaining to [the] interpretation of the statute which is of great import."

■ HRAP Rule 28(b)(4) mandates opening briefs to contain, *inter alia:*

A concise statement of the points of error set forth in separately numbered paragraphs. Each point shall state: (i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) *where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency....*

. . . .

(D) ... *Points not presented in accordance with this section will be disregarded, except that the appellate court, at its*

*option, may notice a plain error not presented.*

(Emphases added.) It follows that "failure to raise or properly reserve issues at the trial level would be deemed waived." *Enoka v. AIG Hawai'i Ins. Co.,* 109 Hawai'i 537, 546, 128 P.3d 850, 859 (2006) (citation and internal quotation marks omitted); *see also In re Tax Appeal of Subway Real Estate Corp. v. Dir. of Taxation, State of Hawai'i,* 110 Hawai'i 25, 30, 129 P.3d 528, 533 (2006) ("as a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal") (brackets, citation, and internal quotation marks omitted). Thus, "an appellate court should only reverse a judgment of a trial court on the legal theory presented by the appellant in the trial court." *Honda v. Bd. of Trs. of the Employees' Ret. Sys.,* 108 Hawai'i 212, 232, 118 P.3d 1155, 1175 (citation and internal quotation marks omitted), *reconsideration denied,* 108 Hawai'i 338, 120 P.3d 237 (2005).

■ However, notwithstanding the foregoing, we have also stated that "the rule is not inflexible and that an appellate court may deviate and hear new legal arguments when justice so requires" and when a question of "great public import" is involved. *Id.* (quoting *Fujioka v. Kam,* 55 Haw. 7, 9, 514 P.2d 568, 570 (1973)) (other citations omitted). Here, Wright proffers no reason—other than his conclusory statement that the interpretation of HRS § 378–3(13) is of "great public import"—for this court to exercise its discretion in examining the issue. Wright's failure to provide any rationale for this court to review his contention is sufficient basis for this court to decline to do so. *See Tax Appeal of Subway Real Estate Corp.,* 110 Hawai'i at 30, 129 P.3d at 533 (declining to consider the new legal issue inasmuch as the cross-appellant did not provide any reason

6. In 2003 and 2004 (after Wright had been terminated), HRS § 378–2.5 was amended to: (1) clarify that the conviction record "shall not exceed the *most recent* ten years, *excluding periods of incarceration*" (emphasis added); (2) provide an employee with "an opportunity to present documentary evidence" to demonstrate that the period of incarceration was less than what is shown on the conviction record; and (3) preclude its application to those employers "who are expressly permitted to inquire into an indi-

vidual's criminal history for employment purposes pursuant to any federal or state law[,]" such as the State or any of its political branches and agencies, the department of education, the judiciary, and armed security services. 2003 Haw. Sess. L. Act 95, § 12 at 186–87; 2004 Haw. Sess. L. Act 79, § 5 at 331–32.

7. As stated earlier, Wright was employed from April 23, 2001 to December 17, 2002.

for this court to address it). However, even assuming that Wright had provided sufficient grounds to warrant a review by this court, his argument would nevertheless fail. Although Home Depot's moving papers did, in fact, make reference to both HRS § 378–2.5(a) and 378–3(13), its entire argument was focused on the principle that Wright's criminal record bore a rational relationship to his employment, which principle is stated in both statutory provisions. The circuit court did not specifically state the statutory number upon which its ruling was based, but found that "there is a rational[ ] relationship between the offense that [Wright] was convicted of [and his employment.]" Thus, inasmuch as HRS § 378–2.5(a) is still a valid statute and even if the circuit court had relied upon both statutory provisions, its reliance on the repealed subsection was harmless. Accordingly, for the reasons discussed above, we decline to invoke plain error under these circumstances.

### B. *HRS § 378–2.5*

With respect to HRS § 378–2.5, Wright argues that: (1) the subject statute does not apply to him because it applies solely to prospective employees; and (2) his conduct involving drugs did not occur on the property of Home Depot or during his employment with Home Depot. Lastly, Wright contends that his prior conviction bears no rational relationship to the duties and responsibilities of his employment. To the contrary, Home Depot maintains that: (1) the express terms of the statute do not prohibit consideration of a current employee's conviction that occurred prior to his employment with the employer; and (2) Wright's prior conviction was rationally related to his duties and responsibilities at Home Depot. Consequently, Home Depot submits that the circuit court correctly dismissed the amended complaint in light of the fact that Wright did not plead facts showing that there was no rational relationship between his 1996 drug conviction and his employment.

### 1. Whether HRS § 378–2.5 Applies to Both Prospective and Current Employees

Wright appears to argue that, because HRS § 378–2.5(a) contains the phrase "sub-ject to subsection (b)" and subsection (b) concerns prospective employees, the subject statute applies only to prospective employees. Wright, therefore, maintains that the subject statute prohibits an employer from considering a current employee's criminal conviction that occurred prior to his employment with the employer. Home Depot, on the other hand, insists that the express terms of HRS § 378–2.5 do not preclude its consideration of a current employee's prior criminal record.

▓▓▓▓ Preliminarily, we acknowledge the well-established principle that

legislative enactments are presumptively valid and should be interpreted in such a manner as to give them effect. Hence, the starting point in statutory construction is to determine the legislative intent from the language of the statute itself. Indeed, absent any constitutional obstacles in applying the law,

> this court's chief duty is to ascertain and give effect to the legislature's intention to the fullest degree, which is obtained primarily from the language contained in the statute itself. When a law is enacted, a presumption exists that the words in the statute express the intent of the legislature.

> Although a departure from a literal construction of a statute is justified when such construction would produce an absurd result and ... is clearly inconsistent with the purposes and policies of the act, this court may not reject generally unambiguous language if construction can be legitimately found which will give force to and preserve all the words of the statute.

*Morgan v. Planning Dep't, County of Kauai,* 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004) (citations, internal quotation marks, and brackets omitted) (ellipsis in original).

▓▓▓▓ As previously quoted, HRS § 378–2.5 provides:

(a) *Subject to subsection (b), an employer may inquire about and consider an*

*individual's criminal conviction record concerning **hiring, termination, or the terms, conditions, or privileges of employment;** provided that the conviction record bears a **rational relationship** to the duties and responsibilities of the position.*

(b) *Inquiry into and consideration of conviction records for prospective employees shall take place only after the prospective employee has received a conditional offer of employment* which may be withdrawn if the prospective employee has a conviction record that bears a rational relationship to the duties and responsibilities of the position.

(c) For purposes of this section, "conviction" means an adjudication by a court of competent jurisdiction that the defendant committed a crime, not including final judgments required to be confidential pursuant to section 571–84; provided that *the period for which the employer may examine the employee's conviction record shall not exceed ten years.*

(Emphases added.) By its plain terms, subsection (a) permits an employer to "inquire about and consider an individual's criminal conviction record" in the context of "hiring, termination, or the terms, conditions, or privileges of employment," as long as "the conviction record bears a rational relationship to the duties and responsibilities of the position." By limiting the aforementioned provision to only prospective employees, as Wright suggests, the phrase "termination, or the terms, conditions, or privileges of employment" would be rendered superfluous. *See In re City & County of Honolulu Corp. Counsel,* 54 Haw. 356, 373, 507 P.2d 169, 178 (1973) (applying the "cardinal rule of statutory construction that a statute ought upon the whole be so constructed that, if it can be prevented, no *clause, sentence* or *word* shall be superfluous, void, or insignificant" (emphases added)). In other words, termination or other privileges of employment are triggered only after an employee begins employment. Thus, based on a plain reading of the statute, it is clear that subsection (a) applies to both prospective and current employees.

With respect to the prefatory phrase contained in subsection (a), *i.e.,* "[s]ubject to subsection (b)," it is well-established that the term "subject to" may mean "limited by," "subordinate to," or "regulated by." *State Sav. & Loan Ass'n v. Kauaian Dev. Co.,* 62 Haw. 188, 198, 613 P.2d 1315, 1321 (1980) (citation omitted). In the context of HRS § 378–2.5, the term "subject to" modifies consideration of conviction records for "hiring" inasmuch as the "hiring" phrase undoubtedly applies to only prospective employees. Stated differently, HRS § 378–2.5(a) permits an employer to "inquire about and consider an individual's conviction record concerning hiring," provided that such inquiry and consideration "shall take place only after the prospective employee has received a conditional offer of employment." HRS § 378–2.5(b). However, in either situation—that is, current or prospective employees,—the employer may only examine conviction records for a period that "shall not exceed ten years." HRS § 378–2.5(c). Thus, contrary to Wright's assertion, consideration of a "conviction record" is not restricted to an employee's conviction that occurs during his employment with the employer.

The foregoing conclusion is further supported by legislative history, in which the legislature expressly indicated that it intended HRS § 378–2.5 to apply to both current and prospective employees. *See* Sen. Stand. Comm. Rep. No. 3282, in 1998 Senate Journal, at 1331; Sen. Stand. Comm. Rep. No. 2959, in 1998 Senate Journal, at 1208 ("The purpose of this bill . . . is to allow employers to consider a criminal conviction record of *prospective or current* employees without violating Hawaii's employment practices laws." (Emphasis added.)); Sen. Conf. Comm. Rep. No. 79, in 1998 Senate Journal, at 776 ("The purpose of this bill . . . is to provide employers with qualified immunity for disclosure and consequences of such disclosure for truthful, fair, and unbiased information about a *current or former* employee's job performance." (Emphasis added.)); Hse. Stand. Comm. Rep. No. 673–98, in 1998 House Journal, at 1300–01 ("The purpose of this bill is to repeal the prohibition against employment

discrimination based upon arrest and court record[,]" by, amongst other things, adding a new definition of "arrest record" that "provid[es] an exception to the prohibition against unlawful discriminatory practices in employment on the basis of an applicant's or *current* employee's record of criminal conviction[.]" (Emphasis added.)).[8]

Accordingly, we believe that HRS § 378–2.5 is not limited in application solely to prospective employees; rather, the statute applies to both current and prospective employees. Nevertheless, the issue remains whether Wright has sufficiently alleged that his drug conviction was not rationally related to his duties and responsibilities as an associate sales clerk in Home Depot's lumber department, as required under HRS § 378–

2.5(a), to survive a motion to dismiss for failure to state a claim.

### 2. Whether Wright Has Sufficiently Alleged that his Conviction Record Does Not Bear a Rational Relationship to his Employment

As previously mentioned, HRS § 378–2.5(a) establishes as a matter of law that an employer, *inter alia*, need not hire, or may terminate, an employee with a conviction (that is less than ten years old), "provided that the conviction record bears a *rational relationship* to the duties and responsibilities of the position." HRS § 378–2.5(a) (emphasis added). Although "rational relationship" is not defined in the statute, the plain and obvious meaning of the phrase is found in the

8. Wright argues that a review of the legislative history indicates that the legislature did not intend to expand the reach of the statute to both current and prospective employees. In support, Wright relies on the floor remarks by Senator Brian Kanno in the 1998 legislative session, with regards to the enactment of HRS § 378–2.5:

> Mr. President, agreement on this measure was reached approximately one hour before the deadline. Because of the lateness of the hour, the language in the measure is, inadvertently, inconsistent. We wanted to state for the record that the intent of the Legislature is to allow employers to have access to conviction records where there is a rational relationship between the duties and the conviction. *What we had agreed to, which is not explicit in the bill, is that this is specifically for prospective employees. The conferees did not support a provision that would allow employers to take their existing workforce and employees and carry out different kinds of questioning and criminal history checks to enable them to fire any existing employees. The conferees had agreed that this would be allowed on a prospective basis only, to look at prospective employees who are applying for positions.*
> I also wanted to clarify that we have had discussions with *both the Senate Judiciary chairs and with the Senate leadership and there is a commitment to go back and fix this measure next session, in the 1999 session.* And it was also indicated that the House Judiciary chair also agrees with us on this provision, and *the intent is not to allow for existing employees to be fired under this measure, and it is to be done so on a prospective basis only.*

Comment by Senator Kanno in 1998 Senate Journal, at 647–48 (emphases added). However, we are not persuaded that Senator Kanno's remarks embodied the legislature's intent. The United States Supreme Court has held that:

> In surveying legislative history[,] we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represent the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. *We have eschewed reliance on the passing comments of one Member, and casual statements from the floor debates.*

*Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (brackets, internal quotation marks, and citations omitted) (emphasis added); *see also Bennett v. Yoshina*, 98 F.Supp.2d 1139, 1150 (D.Haw.2000) ("To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent.... Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill." (Quoting *In re Kelly*, 841 F.2d 908, 912 n. 3 (9th Cir. 1988)), *aff'd*, 259 F.3d 1097 (9th Cir.2001)). As discussed *supra*, the committee reports specifically indicate that HRS § 378–2.5 applied to both current and prospective employees, which Senator Kanno's remarks, in fact, acknowledge. Although the senator's remarks indicate that "there is a commitment to go back and fix this measure next session," the legislature did not revisit HRS § 378–2.5 in the 1999 legislative session. The legislature, however, did revisit HRS § 378–2.5 in the 2003 and 2004 sessions, *see supra* note 6, and, although the legislature amended the statute each session, those amendments did not include "fixing" the statute as indicated in Senator Kanno's remarks. Accordingly, the express terms of the statute continue to permit consideration of a current employee's conviction that occurred prior to his employment with the employer.

words themselves, *i.e.*, under HRS § 378-2.5(a), the relationship between the conviction and the employment must be rational.

In this case and as previously indicated, Wright asserted two counts against Home Depot: (1) a violation of HRS § 378-2; and (2) violations of public policies, which are not before this court on appeal, *see supra* note 2. With respect to his section 378-2 claim, Wright specifically alleged in his complaint that:

7. On or about April 23, 2001, [Home Depot] hired [Wright] to work in [Home Depot] as an associate sales clerk in the lumber department. [Wright] was tested for drugs at the beginning of his employment by [Home Depot], and the results were negative.

8. On or about September 2002, [Wright] was up for a promotion as department supervisor, at which time [he] was tested twice for drugs; the results were negative, clean.

9. On April 30, 1996, [Wright] was convicted for the use of controlled substance, upon pleading guilty, in the Washoe Second Judicial District Court, Reno, Nevada, . . . and sentenced to prison 12–36 months, which was suspended, and placed on probation not to exceed two (2) years. Special conditions were that he pay an administrative fee of $25.00 and chemical fee of $60.00; that on November 5, 1997, [Wright] was honorably discharged from probation.

10. The work performance of [Wright] at [Home Depot] was good[.]

. . . .

12. On December 17, 2002, [Wright's] employment with [Home Depot] was ter-

minated because of [his] conviction for use of controlled substance in 1996. . . .

. . . .

16. [Wright's] conviction . . . in 1996 for the use of controlled substance does not bear a rational relationship to his duties and responsibilities of the position he held at [Home Depot].

Taking the allegations as true and viewing the complaint in the light most favorable to Wright, as the nonmoving party, *Aames Funding Corp.*, 107 Hawai'i at 98, 110 P.3d at 1045, we conclude that, at this stage in the litigation, Wright has sufficiently alleged a claim against Home Depot for violation of HRS § 378-2. However, whether, on an ongoing basis, Wright will be able to demonstrate that his prior conviction does not bear a rational relationship to his employment is an issue within the province of the trier of fact and not a proper issue to be determined by this court as a matter of law on a motion to dismiss. We, therefore, hold that the circuit court erred in dismissing Wright's complaint.[9]

## IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's February 28, 2005 final judgment and remand this case for further proceedings consistent with this opinion.

---

9. At the circuit court and on appeal, Home Depot erroneously equates the phrase "rational relationship" in HRS § 378-2.5 with the rational relationship or rational basis test as applied in the context of constitutional equal protection analysis. Such standard is not applicable here where the claim is based upon a violation of a statute, *i.e.*, HRS § 378-2. As discussed *supra*, the statute at issue in this case does not define the phrase "rational relationship"; accordingly, we resort to "the ordinary meaning of . . . terms not statutorily defined." *Schefke v. Reliable Collection Agency*, 96 Hawai'i 408, 424, 32 P.3d 52, 68 (2001) (citation and internal quotation marks omitted). We, therefore, reject Home Depot's arguments grounded upon the rational basis test in the context of equal protection.