Opinion of the Court by
NAKAMURA, C.J.
This appeal involves a request for disclosure of President Barack Obama’s birth certificate under the Hawai'i Uniform Information Practices Act (Modified) (UIPA), Hawaii Revised Statutes (HRS) Chapter 92F. Plaintiff-Appellant Dr. Robert V. Justice (Plaintiff), appearing pro se, filed a complaint, pursuant to the UIPA, seeking an order directing the Department of Health (DOH) of the State of Hawai'i to permit him “to inspect and copy” President Obama’s original birth certificate. The trial court dismissed Plaintiffs complaint for failure to state a claim upon which relief could be granted.
To be eligible to serve as President of the United States, a person must be a natural born citizen.[2] Plaintiff seeks disclosure of President Obama’s birth certificate so that Plaintiff can assure himself that President Obama is eligible to serve as President. Plaintiff contends that he is entitled to such disclosure based on a provision of the UIPA which requires the disclosure of “[gjovernment records pursuant to a showing of compelling circumstances affecting the health or safety of any individual[.]” HRS § 92F-12(b)(3) (1993).
The sole argument Plaintiff raises on appeal, which is also the only specific basis for relief he asserted in the trial court, is that his complaint states a claim for relief under this “compelling circumstances” provision. That provision, however, is directed at requiring access to records in medical or safety emergency situations. We hold that Plaintiff failed to state a claim for relief based on the “compelling circumstances” provision (HRS § 92F-12(b)(3)). Accordingly, we affirm the trial court’s dismissal of Plaintiffs complaint.
I. BACKGROUND
A.
By letter dated December 31, 2008, Plaintiff wrote to Dr. Chiyome Fukino, M.D. (Dr. Fukino), who was then the Director of the DOH (Director),[3] “requesting the inspection of the original birth certificate for Barack Hussein Obama II,” pursuant to the UIPA. Plaintiff stated that “[t]he inspection of the original birth certificate will allow me and other fellow Americans to determine whether or not Mr. Obama is eligible to hold the Office of President.”
The Director responded by writing a letter to Plaintiff dated January 23, 2009, denying Plaintiffs request. The Director explained that HRS § 338-18(b) (2010) prohibited the DOH from disclosing to Plaintiff the records he sought and that HRS § 92F-13(4) (1993) of the UIPA did not require disclosure of government records protected from disclosure by state law.
On April 7, 2009, Plaintiff instituted the instant action in the Circuit Court of the First Circuit (Circuit Court)[4] by filing a “Complaint to Compel Agency to Disclose Public Records Under the Uniform Information Practices Act (UIPA)” against Dr. Fuki-no, in her official capacity as the Director, and the DOH (collectively, “Defendants”). In his complaint, Plaintiff alleged that he had previously requested, in accordance with the UIPA, “access to and copies of the alleged records in the possession or control of [the DOH]” and that his request had been denied by the Director. Plaintiff attached as exhibits to the complaint and incorporated by reference the December 31, 2008, letter he had sent to the Director as well as the Director’s response. Plaintiff asserted that the “specific document requested is detailed in [the December 31, 2008, letter he sent to the Director].” Plaintiff sought a judgment, pursuant to the UIPA, directing Defendants “to permit Plaintiff to inspect and copy the al *106 leged subject record(s) in the supposed custody of [Defendants] to which access has been denied[.]”
B.
Defendants filed a motion to dismiss Plaintiffs complaint pursuant to Hawaii Rules of Civil Procedure (HRCP) Rule 12(b)(6) (2000).[5] Defendants argued that Plaintiffs complaint to compel Defendants to grant Plaintiff access to President Obama’s birth record failed to state a claim upon which relief could be granted because: (1) HRS § 338-18(b) prohibits Defendants from disclosing public health statistics records, which include birth records, unless the applicant is a pei’son with a “direct and tangible interest” in the records; (2) Plaintiff had not alleged that he falls within the categories of people considered to have a direct and tangible interest in President Obama’s birth record under HRS § 338 — 18(b), and Plaintiff does not qualify as a person with a direct and tangible interest; and (3) the UIPA, under which Plaintiff brought his suit, provides in HRS § 92F-13(4) that disclosure is not required with respect to government records which are protected from disclosure pursuant to state law.
Plaintiff filed a memorandum in opposition to Defendants’ HRCP Rule 12(b)(6) motion to dismiss. The only ground Plaintiff raised in his memorandum for opposing Defendants’ motion was that his complaint stated a claim for relief based on HRS § 92F-12(b)(3) of the UIPA, which he asserted Defendants had faded to address in their motion. HRS § 92F-12(b)(3) provides:
(b) Any provision to the contrary notwithstanding, each agency shall also disclose:
[[Image here]]
(3) Government records pursuant to a showing of compelling circumstances affecting the health or safety of any individual[.]
Plaintiff contended that he was entitled to obtain disclosure of or to inspect President Obama’s birth certificate pursuant to HRS § 92F-12(b)(3), arguing in relevant part as follows:
Plaintiff Dr. Justice takes the position that UIPA requires Defendants under Section 92F-12(b)(3) to disclose or allow for the inspection by Plaintiff Dr. Justice of the original birth certificate of Barack Hussein Obama II purportedly existing. Section 92F-12(b)(3) requires Defendants disclose or allow inspection of a government record (birth certificate is a government record as defined in Section 92F-3) otherwise prohibited under UIPA when there is a “showing of compelling circumstances affecting the health or safety of any individual ”. The United States Constitution under Article II Section 1 requires that an individual be a natural born citizen of the United States in order to be eligible to hold the highest office in the land, which is the Office of President. The Office of President is the heart of our nation and the individual holding that office has the responsibility of ensuring national security for the health and safety of the 300 million Americans living on American soil. The individual holding the Office of President is entrusted with our nuclear arsenal and every American, including Plaintiff Dr. Justice, has a right to know whether or not that individual is a true American eligible to hold the Office of President. North Korea has made several threats to America wherein North Korea has stated that “we will wipe the United States off the face of the earth ”. That is an act of war and Hawaii is in the middle of it. There is no question that a compelling circumstance exists because the health and safety of every American is at stake.
(Emphases in original.)
C.
On August 26, 2009, the Circuit Court held a hearing on Defendants’ motion to dismiss *107 and orally granted Defendants’ motion. The Circuit Court subsequently issued a written order which stated in relevant part:
The Court, having considered all pleadings filed herein, the memoranda both in support of and in opposition to the motion, the arguments of counsel and Plaintiff Pro Se, the applicable law, and the record and files in this case, and having taken all of the material allegations in the Complaint as true and construed in the light most favorable to plaintiff, hereby finds as follows:
1. Vital statistics records maintained by the State of Hawai'i are confidential except to those persons who have a direct and tangible interest in those records by virtue of specific relationships that must be established pursuant to Hawaii Revised Statutes (“HRS”) § 338-18(b).
2. It is undisputed that Plaintiff has not asserted that he has one of those relationships which would give him a direct and tangible interest in the particular vital statistics record that he seeks.
3. Plaintiffs claim to the vital statistics records of Barack Hussein Obama, II is based on his contention that the UIPA requires Defendants to disclose the records to him.
4. While it is tame that HRS § 92F-11 establishes the general rule that the UIPA favors affirmative agency-disclosure responsibilities, HRS § 92F-13(4) specifically excludes from disclosure those government records which pursuant to state or federal law are protected from disclosure, such as vital statistics records.
5. Plaintiff contends that HRS § 92F-12(b)(3) operates to supplant the exception provided by HRS § 92F-13(4) in cases where there is a showing of compelling circumstances affecting the health or safety of any individual. Defendants admit they would defer to that provision if there were in fact compelling circumstances affecting the health or safety of any individual.
6. Plaintiffs argued threat to his health or safety stems from quotes he attributes to North Korea that “we will wipe the United States off the face of the earth.” Plaintiff claims that those quotes are an act of war and that “there is no question that a compelling circumstance exists because the health and safety of every American is at stake.”
7.Plaintiff has not made any showing of circumstances showing anything affecting his health or safety, nor has he alleged anything that would indicate he might have a right to access the vital statistics records he seeks.
THEREFORE, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED that Plaintiff has failed to state a claim upon which relief can be granted under any authority. Defendants’ Motion to Dismiss Complaint to Compel Agency to Disclose Public Records under the Uniform Information Practices Act (UIPA) is granted. All of Plaintiffs claims against the Defendants are dismissed with prejudice.
Pursuant to its order granting Defendants’ motion to dismiss, the Circuit Court issued a final judgment on October 9, 2009, in favor of Defendants and against Plaintiff on all claims contained in Plaintiffs complaint. Plaintiff timely filed a notice of appeal from the final judgment. After the parties’ respective appellate briefs were filed, the case was assigned to a merit panel of this court on July 20,2010.
II. STANDARDS OF REVIEW
A. Motion to Dismiss
We review a trial court’s ruling on a motion to dismiss under HRCP Rule 12(b)(6) de novo. Wright v. Home Depot U.S.A., Inc., 111 Hawai'i 401, 406, 142 P.3d 265, 270 (2006).
A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. We must therefore view a plaintiffs complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court’s order dismissing a complaint[,] our *108 consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.
In re Estate of Rogers, 103 Hawai'i 275, 280-81, 81 P.3d 1190, 1195-96 (2003) (internal citations, brackets, and ellipsis points omitted). A dismissal under HRCP Rule 12(b)(6) “is warranted only if the claim is clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim[.]” Rosa v. CWJ Contractors, Ltd., 4 Haw.App. 210, 215, 664 P.2d 745, 749 (1983) (internal quotation marks and citation omitted). “[T]he court is not required to accept conclusory allegations on the legal effect of the events alleged.” Marsland v. Pang, 5 Haw.App. 463, 474, 701 P.2d 175, 186 (1985).[6]
B. Statutory Interpretation
Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard.
Our statutory construction is guided by the following well established principles:
[When construing a statute] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.
Lingle v. Hawai'i Gov’t Emps. Ass’n, AFSCME, Local 152, AFL-CIO, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (brackets and ellipsis points omitted).
III. DISCUSSION
Defendants argue that HRS § 338-18(b) prohibits them from permitting Plaintiff to inspect or copy birth records pertaining to President Obama. Plaintiff does not directly dispute this argument but contends that he is entitled to obtain disclosure of President Obama’s birth records pursuant to the UIPA’s “compelling circumstances” provision, HRS § 92F-12(b)(3). We begin with an analysis of HRS § 338-18 (2010).
*109 A.
HRS § 338-18 is part of the State Public Health Statistics Act (Health Statistics Act), which authorizes the DOH to collect, compile, and preserve “public health statistics.” Birth records are included within the definition of “public health statistics.”[7] HRS § 338-18(a) makes it unlawful for any person to permit access to vital statistics records unless authorized by the Health Statistics Act or rules adopted by the DOH. HRS § 338-18(a) provides:
§ 338-18. Disclosure of records, (a) To protect the integrity of vital statistics records,[8] to ensure their proper use, and to ensure the efficient and proper administration of the vital statistics system, it shall be unlawful for any person to permit inspection of, or to disclose information contained in vital statistics records, or to copy or issue a copy of all or part of any such record, except as authorized by this part or by rules adopted by the department of health.
HRS § 338 — 18(b) specifically prohibits the DOH from permitting the inspection, or issuing certified copies, of public health statistics records, including birth records, unless “the applicant has a direct and tangible interest in the record.” HRS § 338-18(b) identifies thirteen categories of persons that shall be considered to have a “direct and tangible interest.” These categories of persons include the registrant; persons with a family relationship with or who are acting on behalf of the registrant; persons who require information in the records to establish rights related to adoption, monetary payments, or property; and persons whose right to disclosure is established by court order. HRS § 338-18(b) provides:
(b) The department shall not permit inspection of public health statistics records, or issue a certified copy of any such record or part thereof unless it is satisfied that the applicant has a direct and tangible interest in the record. The following persons shall be considered to have a direct and tangible interest in a public health statistics record:
(1) The registrant;
(2) The spouse of the registrant;
(3) A parent of the registrant;
(4) A descendant of the registrant;
(5) A person having a common ancestor with the registrant;
(6) A legal guardian of the registrant;
(7) A person or agency acting on behalf of the registrant;
(8) A personal representative of the registrant’s estate;
(9) A person whose right to inspect or obtain a certified copy of the record is established by an order of a court of competent jurisdiction;
(10) Adoptive parents who have filed a petition for adoption and who need to determine the death of one or more of the prospective adopted child’s natural or legal parents;
(11) A person who needs to determine the marital status of a former spouse in order to determine the payment of alimony;
(12) A person who needs to determine the death of a nonrelated co-owner of property purchased under a joint tenancy agreement; and
(13) A person who needs a death certificate for the determination of payments under a credit insurance policy-
(Emphasis added.)
B.
Plaintiff does not dispute Defendants’ assertion (and the Circuit Court’s finding) that he does not qualify as a person with a “direct and tangible interest” in President Obama’s *110 birth records within the meaning of HRS § 338-18(b). Plaintiff, however, sought disclosure of President Obama’s birth records pursuant to the UIPA. As discussed below, the restrictions on access to birth records set forth in HRS § 338 — 18(b) are incorporated into the UIPA.
Part II. of the UIPA, HRS §§ 92F-11 through 92F-19, entitled “Freedom of Information,” contains the provisions at issue in this appeal. HRS § 92F-11 (1993 & Supp. 2010) sets forth the general responsibility of Hawai'i government agencies to make records available for inspection and copying. HRS § 92F-11 provides, in relevant part, as follows:
[§ 92F-11] Affirmative agency disclosure responsibilities, (a) All government records are open to public inspection unless access is restricted or closed by law.
(b) Except as provided in section 92F-13, each agency upon request by any person shall make government records available for inspection and copying during regular business hours[.]
HRS § 92F-12 (1993 & Supp.2010) identifies specific categories of records that each agency is required to disclose.[9] Pertinent to this appeal, HRS § 92F-12(b)(3) states: “Any provision to the contrary notwithstanding, each agency shall ... disclose: ... (3) Government records pursuant to a showing of compelling circumstances affecting the health or safety of any individual!)]” HRS § 92F-13(4), in turn, provides that Part II of the UIPA “shall not require disclosure of: ... (4) Government records which, pursuant to state or federal law ..., are protected from disclosure!)]”[10]
C.
Defendants assert that the affirmative duty of agencies to disclose government records under the UIPA is subject to the HRS § 92F-13(4) exception for government records protected from disclosure by state law. They further assert that HRS § 338 — 18(b) prohibits the DOH from permitting Plaintiff to inspect President Obama’s birth records because Plaintiff does not have a direct and *111 tangible interest in those records. Defendants reason that because the HRS § 92F-13(4) exception incorporates the prohibitions against disclosure set forth in HRS § 338-18(b), the UIPA does not permit the DOH to disclose President Obama’s birth records to Plaintiff.[11]
Plaintiff, however, contends that the UIPA’s “compelling circumstances” provision, HRS § 92F-12(b)(3), is controlling. In effect, Plaintiff argues that HRS § 92F-12(b)(3) overrides the HRS § 92F-13(4) exception to disclosure and HRS § 338-18(b).
HRS § 92F-12(b) and HRS § 92F-13 provide conflicting directions on which section takes precedence in the event of a request for records that satisfies the criteria of both sections. HRS § 92F-12(b) provides that “[a%]ny provision to the contrary notwithstanding, each agency shall ... disclose” the six categories of records or information listed in HRS § 92F-12(b). (Emphasis added.) On the other hand, HRS § 92F-13 states that “[t]his part,” which includes HRS § 92F-12(b), “shall not require disclosure of’ the five categories of records set forth in HRS § 92F-13. Assuming, without deciding, that HRS § 92F-12(b)(3) may override HRS § 92F-13(4), we conclude that Plaintiff failed to state a claim for relief based on HRS § 92F-12(b)(3) in his complaint.
D.
Plaintiffs stated reason for seeking to inspect President Obama’s birth records is to permit Plaintiff to verify whether President Obama is eligible to serve as President. In his letter to the Director, Plaintiff asserted that his inspection of President Obama’s original birth certificate was necessary “to determine whether or not Mr. Obama is eligible to hold the Office of President.” On appeal, in support of his claim that compelling circumstance under HRS § 92F-12(b)(3) exist for his inspection request, Plaintiff states that “the President of the United States is the Commander-in-Chief of our military and entrusted with our nuclear and chemical arsenals. ...” Plaintiff further argues that his inspection of “the purported birth certificate for [President Obama] will ensure the health and safety of all 300 million of us by making sure that our military and our nuclear and chemical arsenals are still under our control and not in the control of any one of our enemies.”
As noted, HRS § 92F-12(b)(3) requires the disclosure of “government records pursuant to a showing of compelling circumstances affecting the health or safety of any individual!.]” The word “compelling” is defined by dictionary to mean, among other things: 1) “... overpowering,” 2) “having a powerful and irresistible effect,” Random House Webster’s unabridged dictionary 417 (2d ed.2001), and 3) “[urgently requiring attention.” American Heritage Dictionary of the English Language, 376 (4th ed.2006).
HRS § 92F-12(b)(3) uses language that is substantially identical to Section 552a(b)(8) of the federal Privacy Act, 5 U.S.C. § 552a(b)(8), which provides in relevant part:
(b) Conditions of disclosure. — No agency shall disclose any record which is contained in a system of records ..., except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
[[Image here]]
(8) to a person pursuant to a showing of compelling circumstances affecting the health or safety of an individual if upon such disclosure notification is transmitted to the last known address of such individual[.]
(Emphasis added.)
The Senate and House committee reports regarding Privacy Act Section 552a(b)(8) indicate that it was intended to apply in rare situations when the requested disclosure was necessary to save the life or protect the safety of an individual in a medical or safety emergency. The Senate committee report states:
This subsection is designed to protect an employee or agency from being in technical violation of the law when they disclose *112 personal information about a person to save the life or protect the safety of that individual in a unique emergency situation. The subsection requires a showing, which should be documented, of compelling circumstances affecting the health or safety of the person, or enabling identification for purposes of aiding a doctor to save such person’s life. The discretion authorized here is intended to be used rarely and a precise record of the reasons for the disclosures must be made, including a description of the actions taken to notify the individual at the last known address.
S.Rep. No. 93-1183, at 71, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 6916, 6985. The House committee report states:
The Committee is of the view that special consideration must be given to valid emergency situations, such as an airline crash or epidemic, where consent cannot be obtained because of time and distance and instant action is required, perhaps as a matter of life and death.
H.R.Rep. No. 93-1416, at 13, 93rd Cong., 2d Sess. (1974).
In DePlanche v. Califano, 549 F.Supp. 685, 704 (W.D.Mich.1982), the court concluded that the legislative history of Section 552a(b)(8) indicates that it was intended to apply only to “life and death situations” where instant action was required. In De-Planche, a non-custodial father sought disclosure of his children's address based on his affidavit statement that the children were being neglected. Id. at 703-04. The court held that the father’s affidavit was insufficient to show “compelling circumstances affecting the health or safety of the children.” Id. at 704 (internal quotation marks omitted).
Given their substantially identical language and similar subject matter, we conclude that HRS § 92F-12(b)(3) should be interpreted in the same fashion as Section 552a(b)(8). See French v. Hawaii Pizza Hut, Inc. 105 Hawai'i 462, 467, 99 P.3d 1046, 1051 (2004) (noting in construing a Hawaii statute with language similar to a federal statute that “we may look ‘to the interpretations of analogous federal law[ ] by the federal courts for guidance’”).[12] Here, Plaintiffs asserted reason for wanting to inspect President Obama’s birth records is so that Plaintiff can verify whether President Obama is a natural born citizen and thus eligible to serve as President. While Plaintiff may have a strong desire to personally verify President Obama’s eligibility, we conclude that such desire does not constitute “compelling circumstances affecting the health or safety of any individual” within the meaning of HRS § 92F-12(b)(3).
Plaintiffs reason for seeking disclosure of President Obama’s birth records does not state an “overpowering” or urgent need for the records to save the life or protect the safety of an individual in a medical or safety emergency. Under the United States Constitution, the power to remove a sitting President resides in Congress. Barnett v. Obama, No. 09-0082, 2009 WL 3861788, at *15-*16 (C.D.Cal. Oct. 29, 2009). Plaintiffs asserted need to inspect President Obama’s birth records is diminished by the fact that Plaintiff does not have the power or authority to determine President Obama’s eligibility to serve as President. Moreover, Plaintiffs complaint did not allege any basis for questioning that President Obama is a natural born citizen and that he is eligible to serve as President. Under these circumstances, we *113 conclude that Plaintiff failed to state a claim for relief based on HRS § 92F-12(b)(3).
IV. CONCLUSION
We affirm the final judgment of the Circuit Court.

.Article II, Section 1 of the United States Constitution provides in relevant part that “No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President[.]”

. See footnote 1, supra.

. The Honorable Eden Elizabeth Hifo presided.

. HRCP Rule 12(b)(6) provides:
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-parly claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

. We note that as exhibits to Plaintiff's memorandum in opposition to Defendants’ HRCP Rule 12(b)(6) motion, Plaintiff attached evidence of oaths that he, the Circuit Court judge, Defendants’ attorneys, and the Hawaii Attorney General had taken to "support and defend the Constitution of the United States.” Under HRCP Rule 12(b) (2000), if, on an HRCP Rule 12(b)(6) motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [HRCP] Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.” The Circuit Court did not expressly exclude Plaintiff’s exhibits in considering Defendants’ HRCP Rule 12(b)(6) motion, but made it clear at the outset of the hearing that the Circuit Court was treating the motion as an HRCP Rule 12(b)(6) motion.
The standard, both at trial and on appellate review, for an HRCP Rule 12(b)(6) motion is more difficult for Defendants to satisfy than the standard for an HRCP Rule 56 motion. See HRCP Rule 56 (2000); Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir.1992) (construing the parallel federal rules); Jorge v. Rumsfeld, 404 F.3d 556, 558 n. 2 (1st Cir.2005) (same). For purposes of our analysis, we apply the standard for an HRCP Rule 12(b)(6) motion, the standard more favorable to Plaintiff, without deciding whether Defendants’ motion to dismiss should be viewed as having been converted to a summary judgment motion. This is because, as discussed below, even under this standard more favorable to Plaintiff, we affirm the Circuit Court’s final judgment.

. The term "public health statistics” is defined to include "the registration, preparation, transcription, collection, compilation, and preservation of data pertaining to births, adoptions, legitimations, deaths, fetal deaths, morbidity, marital status, and data incidental thereto.” HRS § 338-1 (2010).

. The term "vital statistics” is not defined in HRS Chapter 338, but appears to be used synonymously with the term “public health statistics.”

. HRS § 92F-12(a) sets forth sixteen categories of records that Hawai'i government agencies are required to disclose, including such things as agency rules and opinions; purchasing information; land ownership records; minutes of agency meetings; agency loan program records; certified payroll records; consulting contracts; licensee and permit records; and agency employees' and officers’ names, compensation, job description, education and training background, and work experience. HRS § 92F-12(b), which sets forth an additional six categories of records or information that are required to be disclosed, provides as follows:
(b) Any provision to the contrary notwithstanding, each agency shall also disclose:
(1) Any government record, if the requesting person has the prior written consent of all individuals to whom the record refers;
(2) Government records which, pursuant to federal law or a statute of this State, are expressly authorized to be disclosed to the person requesting access;
(3) Government records pursuant to a showing of compelling circumstances affecting the health or safety of any individual;
(4) Government records requested pursuant to an order of a court;
(5) Government records pursuant to a subpoena from either house of the state legislature; and
(6) Information from the motor vehicle registration files, provided that the person requesting such files shall have a legitimate reason as determined by rules.

. HRS § 92F-13 sets forth five categories of records that are exceptions to the UIPA’s general rule of disclosure:
§ 92F-13 Government records; exceptions to general rule. This part shall not require disclosure of:
(1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy;
(2) Government records pertaining to the prosecution or defense of any judicial or quasi-judicial action to which the State or any county is or may be a party, to the extent that such records would not be discoverable;
(3) Government records that, by their nature, must be confidential in order for the government to avoid the frustration of a legitimate government function;
(4) Government records which, pursuant to state or federal law including an order of any state or federal court, are protected from disclosure; and
(5) Inchoate and draft working papers of legislative committees including budget worksheets and unfiled committee reports; work product; records or transcripts of an investigating committee of the legislature which are closed by rules adopted pursuant to section 21-4 and the personal files of members of the legislature.

. Defendants did not argue in the Circuit Court, and do not argue on appeal, that President Obama’s birth records are protected from disclosure by-federal law.

. In addition, the lineage of HRS § 92F-12(b)(3) indicates it was modeled upon Section 552a(b)(8) of the Privacy Act. HRS § 92F-12(b)(3) of the UIPA incorporated language previously contained in HRS § 92E-4(4) (1985) of Hawai'i's Fair Information Practice Act, which was repealed by the enactment of the UIPA. See 1988 Haw. Sess. Laws Act 262, § 4 at 482. HRS § 92E-4(4), in turn, was apparently based on § 3-101(6) (1980) of the Uniform Information Practices Code (Model Code) of the National Conference of Commissioners on Uniform State Laws, which was in draft form when HRS § 92E-4(4) was enacted. See S. Stand. Comm. Rep. No. 1005-80, in 1980 Sen. Journal, at 1517. Model Code § 3-101(6) contains language which parallels Section 552a(b)(8) of the Privacy Act. The committee reports on the UIPA and the Fair Information Practices Act and the commentary to the Model Code do not provide any helpful guidance concerning the interpretation of the phrase "compelling circumstances affecting the health or safety of any individual” as used in HRS § 92F—12(b)(3).